86 So.2d 66 (1956)
229 La. 360
HOLMES COMPANY
v.
Dillard FORET.
No. 42446.
Supreme Court of Louisiana.
February 20, 1956.
Earl Edwards, Marksville, for plaintiff-appellant.
Edwin L. Lafargue, Baton Rouge, for defendant-appellee.
MOISE, Justice.
Plaintiff, Holmes Company, appeals from a judgment of the trial court, which decreed the manner in which an amount deposited by the defendant in the registry of the court should be distributed between plaintiff and defendant.
Defendant, Dillard Foret, asks this Court to affirm the judgment in all respects, with the exception of the allowance of attorney's fees to plaintiff.
As a predicate in this suit we adopt the following well-stabilized jurisprudence of this Court that where the trial judge has seen, heard, and observed the witnesses and the many things that transpire in the courtroom that are not susceptible to being taken down by a stenographer, his judgment on a question of fact will not be disturbed unless manifestly erroneous. Olivier v. Abunza, 226 La. 456, 76 So.2d 528; Nalty v. Nalty, 222 La. 911, 64 So.2d 216; Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367. Since this case presents a matter of fact, we adopt the following reasons of the trial judge in full:
"This action is in the nature of an accounting between plaintiff and defendant, growing out of a rice farming venture engaged in by the parties. In the year 1952, the parties entered into a verbal agreement whereby plaintiff was to furnish the land, seed rice and water for the crop, and defendant was to plant, raise and harvest the rice crop. Proceeds from the sale of the rice were to be divided equally between them. In addition, however, and in order to permit defendant to carry on in their venture, plaintiff agreed and did, from time to time, make cash advances or loans to defendant; and, on December 9, 1952, defendant executed a promissory note secured by chattel mortgage and delivered it to plaintiff to be used as collateral security for the loans made to him. Under this arrangement, *67 the parties proceeded to raise rice crops during each of the years 1952, 1953 and 1954.
"At the end of the 1954 crop season, plaintiff instituted this suit on the promissory note it held, claiming a total of $2,807.50 for alleged unpaid advances made to defendant during the years 1952, 1953 and 1954, together with 6% interest and 10% attorney's fees thereon, as provided for in said note. Defendant answered the suit, and admitted owing plaintiff $1,700.00 for advances made to him in 1954, and $97.60 carried over from the 1953 advances made to him, but denied that any of the remaining items set forth in plaintiff's statement were loans or advances made to him. Specifically, the alleged indebtedness which defendant denies owing consists of the following items: (a) $601.80 claimed by plaintiff for the construction of two rice flumes on the property farmed in the years 1952 and 1953; (b) $457.50 claimed by plaintiff for weed poison purchased and applied to the 1954 rice crop; and, (c) $50.00 claimed by plaintiff and represented by its check to defendant dated February 11, 1954. Additionally, and by way of set-off, defendant alleges that plaintiff is indebted to him in the amount of $711.33 for the use of defendant's tractor during the 1954 crop season.
"The issues involved in this cause are primarily questions of fact, the solution to which must be found in a verbal agreement between the parties. In view, however, of the hopeless conflict apparent in the testimony of plaintiff and defendant as to what was and was not agreed upon, the court will treat each item separately and in light of the evidence adduced concerning it.
"It is admittedly true that throughout the years 1952, 1953 and 1954 plaintiff made its regular advances to defendant by way of its personal check drawn against the plaintiff company account and payable to the order of the defendant. These checks were always in the amount of either $100.00 or $200.00, and the total amount advanced each month was generally $400.00. At the end of each crop year, the plaintiff then furnished defendant with a statement setting forth each advance or loan made to defendant during the year, and defendant paid the advances out of his share of the rice crop.
"Turning now to the first claim of plaintiff, which is for $601.80 for two rice flumes constructed on the property farmed, the evidence discloses that the first flume was constructed in April, 1952, for a total cost of $350.00, and that the second flume was constructed in September 1953, for a total cost of $251.80. In each instance, plaintiff contracted with the Avoyelles-St. Landry Soil Conservation District for the construction of the flumes, and likewise in each instance, issued its check payable to the order of that concern when it completed the work. Plaintiff contends, however, that under the verbal agreement entered into between the parties, it was the plaintiff's obligation to bring the water up to the field only, and thereafter it was up to the defendant to construct whatever flumes and ditches were necessary to distribute the water over the field. The only witness to testify for plaintiff on this question was Hubert Holmes, one of the partners of the plaintiff company. The witness stated that he had never raised rice before, and did not know anything about rice farming, but that under like arrangements between landowners and farmers, the farmers always paid for the rice flumes. On the other hand, the defendant testified that plaintiff agreed to pay for the flumes under their verbal agreement. He stated further that he had raised rice crops for many years on other people's property, and that the landowners had always paid for the construction of the flumes necessary to convey the water through the fields.

*68 "The evidence further discloses that at the end of the year 1952, plaintiff presented its statement to defendant for all of the advances or loans made to defendant during that year, and the statement did not include the amount paid by plaintiff for the construction of the first flume. Likewise, at the end of the year 1953, plaintiff again presented its statement to defendant of all advances made to him, and the statement did not include the amount paid by plaintiff for the construction of either the first or the second flume. Plaintiff endeavors to explain away this obvious departure from the normal manner in which advances were made and accountings had between the parties, by asserting that these advances were not ordinary loans or cash advances, and were therefore not included on the statements to defendant, but carried along from year to year under a separate gentleman's agreement between the parties.
"The Court thinks it evident that the preponderance of evidence on this issue is heavily in favor of the defendant. Plaintiff itself adopted a sane and prudent manner of making its advances, and accounting, to defendant. By that method, in making the checks payable to defendant, both parties were put on notice that a loan was being made, and, in furnishing defendant a statement of all advances made during the year, both parties could understand and verify the amount of the indebtedness. For plaintiff to now recover for alleged advances made to defendant several years ago in a manner at variance with their generally accepted practice of dealing with one another, would at the very least require that it bear the burden of proving the indebtedness. This it has failed to do.
"The second item claimed by plaintiff is the sum of $457.50 for weed poison used on the 1954 rice crop. This claim is represented by two checks filed in evidence by plaintiff, both of which are drawn against the account of the plaintiff company and payable to the Dixie Spraying Service, Inc. It is admitted that these checks were drawn by plaintiff Hubert Holmes, delivered to defendant, and that defendant purchased the weed killer in the name of Holmes Company and had it shipped to him, defendant, at the rice farm. There was nothing in the original agreement between the parties concerning the purchase of weed killer, but plaintiff contends that the weed killer takes the place of hoeing, and inasmuch as it was defendant's duty to raise the crop he should be held responsible for the cost of the weed killer. Defendant admitted having himself purchased some weed killer during the 1952 and 1953 crop season, but contends that he informed plaintiff that he did not consider it his obligation to do so, and that plaintiff agreed to buy the weed killer for the 1954 crop if defendant would spread it.
"Again in this instance, the checks upon which plaintiff bases its claim are not made payable to defendant, as was the normal manner of making advances to him. However, across the face of each of the checks is the notation "For Dillard Foret", the defendant. Plaintiff's witness Hubert Holmes, a partner in the plaintiff company, testified that the notations were placed upon the checks at the time that he drew and handed them to defendant. Under careful cross examination, and after having been warned by counsel for defendant that the bank upon which the checks were drawn would undoubtedly have a picture of them at the time they were paid, this witness unqualifiedly stated that he was positive he placed the notations on the checks at the time he drew them. After this case was closed, however, it was subsequently reopened by agreement of counsel, and a joint stipulation of fact was filed herein by counsel for plaintiff and defendant, wherein it is *69 stated that notwithstanding the testimony of plaintiff's witness Hubert Holmes, at the time the checks in question were paid by the bank upon which they were drawn the notations "For Dillard Foret" did not appear on either of the checks. In view of this extraordinary development, the court cannot help but interpret the testimony of the witness as a deliberate attempt to distort the facts and mislead the court in reaching its decision. If the plaintiff thought so little of its claim that it felt it necessary to resort to such tactics, then the court is at a loss to understand how plaintiff could expect the court to loan the claim much credence."[1]
"The third item claimed by plaintiff is the sum of $50.00, represented by its check, payable to the order of defendant, dated February 11, 1954. Plaintiff admits that this was not one of the regular advances made to defendant during the rice crop season, but contends that defendant was in need of groceries at that time, and borrowed the money from it. Defendant testified that plaintiff hired him to plow some thirty acres of cottonland during the first part of February, for an agreed price of $50.00, and that he had his son plow the field and the check was given to him by plaintiff in payment for said work. Defendant's testimony is corroborated by that of his wife, who saw her son plow the field. On the other hand, plaintiff Hubert Holmes testified that he often times hired defendant for odd jobs around its farm, and admitted that defendant had been hired to plow some cotton land, but denied that he agreed to pay a price of $50.00 for the job. This witness also stated that he know he paid defendant for plowing the field, because the defendant never had to ask him for it, and if he had not paid him, defendant most certainly would have done so. Plaintiff also asserts that if it had any intent of `framing' the defendant on this check, it could just as easily have sued him on many more checks of a like nature, and it introduced fourteen of such checks in evidence, all payable to the order of defendant, for work done by him outside of the scope of the rice farming agreement.
"The evidence clearly established the fact that defendant did plow some thirty acres of land for plaintiff in the first days of February. Plaintiff admits that it paid him for that work, but it has made no effort to show when or in what manner it paid defendant. From the checks introduced in evidence by plaintiff, it is apparent that from the 1st day of February to the 6th day of April, the only check issued to defendant that could have possibly been in payment of the plowing is the $50.00 check here in question. In the absence of any further light being shed on the question by plaintiff, it is abundantly clear that the check was given defendant in payment of the services he had rendered plaintiff.
"One other question arises in this issue, which is due to the fact that when the check was introduced in evidence it bore the notation `Loan' written across its face. Plaintiff Hubert Holmes testified that he had written the check, and that he wrote the word loan across its face at the time he gave it to defendant. The witness made that statement at the same time he testified about the notations present on the two checks was unquestionably false, the court can find no reason to give credence to his testimony in this instance. In his brief, however, learned counsel for plaintiff contends that inasmuch as defendant and his counsel went to the bank to ascertain whether or not the three checks had the notations written upon them at the time they were paid, and the stipulation *70 subsequently filed made no mention of the $50.00 check, then the court must assume that the word `loan' was written on the check when it was paid. Apparently learned counsel for plaintiff overlooks the fact that he himself was a party to that stipulation, and that he too went to the bank to inspect the pictures of the checks, and if the bank had a picture of the check with the word `loan' written on it, it is inconceivable that counsel would have failed to make that fact known in the stipulation which he signed. The only assumption the court can draw from the stipulation is that the bank did not have any information at all concerning the $50.00 check in question. Therefore, notwithstanding the notation written on the check, the court is satisfied that a preponderance of the evidence is in favor of the defendant.
"The final issue involved is a claim by defendant for $711.33, allegedly due him for the use of his tractor during 1954. Plaintiff admits having hired the use of the tractor, and having agreed to pay defendant a reasonable rental therefor. By agreement of counsel, the court appointed two experts to arrive at the fair hourly rental value of the tractor, and the experts reported that the rental value was $2.00 per hour. Therefore, the only question now to be determined is the number of hours the tractor was used.
"Defendant alleges that his tractor was used a total of 355 hours and 40 minutes. In support of that contention, defendant, his wife and their daughter all testified that they had assisted in keeping track of the number of hours the tractor was used. They all stated that when the use of the tractor was completed, the daughter made a detailed statement, consisting of two pages which set forth the number of days the tractor was used, as well as the number of hours in each day that it was used. Two copies of the statement were prepared, and defendant testified that he delivered one of the statements to the plaintiff. All of the witnesses stated that the tractor was used a total of 355 hours and 40 minutes. Defendant introduced the statement in evidence, and it is apparent that the first page is principally a list of the days and dates that the tractor was run continuously; the notation `total 180 hours' is set opposite the list of the days, obviously indicating the total number of hours the tractor ran during the days listed. The rest of the first page and all of the second page is then devoted to a detailed breakdown of the exact number of hours the tractor was used intermittently on the days that followed the ones first listed, and at the end of this list, at the bottom of the second page, is the notation `total 175 hours and 40 minutes.' Adding the two figures together, we arrive at the grand total of 355 hours and 40 minutes, which is the time claimed by defendant.
"The only evidence to conflict with the defendant's contention is the testimony of plaintiff Hubert Holmes. This witness stated that he left it up to defendant to keep account of the number of hours the tractor was used, and that he himself had no idea how long it was used. He stated, however, that prior to the institution of this suit, defendant presented him with a statement of the number of hours the tractor was used, and that according to that statement, the total number of hours was 175 and 40 minutes. He thereupon produced the second sheet of the statement, explaining that he had apparently misplaced or lost the first sheet. This second sheet is an exact duplicate of the second sheet of the defendant's statement, and does have, as explained above, the total of 175 hours and 40 minutes at the bottom thereof.
"The court does not find anything inconsistent in the two statements presented; if plaintiff had been misled, it is due to the fact that he lost the *71 first sheet of his statement. When the statement is read as a whole, it is obvious that it reflects the tractor was used a total of 355 hours and 40 minutes, and there is nothing in the record to seriously dispute that fact.
"In an effort to avoid the payment of attorney's fees called for in the note plaintiff sued upon, defendant attempted to show on the trial that he had made a tender of the amounts due plaintiff on the note, prior to the institution of this suit. The evidence presented on that score is rather vague, but the court is convinced that defendant did not make a legal tender, as prescribed by law, and should therefore be cast for 10% attorney's fees called for in the note."
We have reviewed the jurisprudence with respect to tender, LSA-Revised Civil Code, Article 2168, Code of Practice, Article 155, and we agree with the trial judge that in the instant case a valid tender was not made.
"At the time that defendant filed his answer herein, on October 7, 1954, he deposited in the registry of the court, the sum of $3,012.53, and prayed that this court distribute those funds between plaintiff and defendant in accordance with judgment rendered herein.
"Accordingly, for the reasons set forth above, let there be judgment herein in favor of plaintiff for the following advances or loans made to defendant and set forth on the itemized statement of account attached to plaintiff's petition, to-wit: March 8, 1954-$200.00; March 19, 1954-$200.00; April 2, 1954-$200.00; April 16, 1954-$200.00; May 3, 1954-$200.00; May 15, 1954-$200.00; May 31, 1954-$100.00; June 7, 1954-$100.00; June 16, 1954-$100.00; June 19, 1954-$100.00; July 3, 1954-$100.00 and $97.60 carried over from the 1953 account; together with interest on each of said advances at the rate of 6% per annum from the respective dates thereof until the 7th day of October, 1954; thereby making a total amount due plaintiff, including both principal and interest of One Thousand Eight Hundred Forty-Eight and no/100 ($1848.00) Dollars. In all other respects, excepting the award for attorney's fees hereinafter set forth, let the demands of plaintiff be and they are hereby rejected.
"Let there be further judgment herein in favor of the defendant, and against the plaintiff, for the full sum of $711.33 as rent for the use that plaintiff made of defendant's tractor during the year 1954; and, let the amount of the judgment hereinabove awarded plaintiff, that is, $1,848.00, be set-off by the amount of the judgment in favor of defendant, that is, $711.33, thereby leaving a net balance due plaintiff of $1,136.67.
"Let there be further judgment herein awarding unto plaintiff 10% of $1,250.34 as attorney's fees, and let the funds deposited in the registry of the court by defendant, in the amount of $3,012.53, be distributed between the parties as follows: to plaintiff the sum of $1,250.34;to defendant, the sum of $1,762.19."
For the reasons assigned, the judgment of the trial court is affirmed; plaintiff to pay all costs.
NOTES
[1] The tactics resorted to are shown in the reasons of the trial judge which we have adopted in full.