91 So.2d 784

**Alma S. HEINTZ, Wife of Fred GILBERT**

**v.**

**Jared Y. HEINTZ.**

No. 42579.

Supreme Court of Louisiana.

Dec. 10, 1956.

Fred J. Heintz, Covington, Benj. W. Miller, Bogalusa, for plaintiff and appellant.

McDougall & Rodrigue, Julian J. Rodrigue, Covington, for defendant-appellee.

MOISE, Justice.

The issue here is the validity of a nuncupative will by public act. The parties litigant are sister and brother. The will is that of their mother, Mrs. Lydia Cooper Heintz. The ground asserted for nullity is that the formalities provided by Article 1578, of the LSA–Civil Code, were not complied with at the time of the confection of the will. The question for decision is, therefore, one of fact. From an adverse judgment the plaintiff has appealed.

On October 29, 1951, in her home located in St. Tammany Parish, Mrs. Lydia Cooper Heintz dictated her last will and testament in the presence of Lorraine L. Keen, Kenneth W. Julian, and Minnie B. Heintz. The dictation was made to Mr. Lindsay McDougall, attorney and notary, from the Parish of St. Tammany. On completion of the dictation the notary read the will to the testatrix in the presence of all the witnesses (this statement is corroborated by the testimony of the notary and all of the witnesses), and the testatrix expressed herself as being satisfied with the results accomplished.

■ The entire estate consisted on an undivided one-half interest in community property valued at $20,519.25. In the disposition of her estate the testatrix bequeathed the usufruct to her husband, made a small donation to her plaintiff daughter, and gave a sizable portion of her estate to her son. It is because of this latter bequest that plaintiff now seeks a reduction of the donation made to her brother, or an annulment of the will. The ground alleged is that during the writing of the will one of the witnesses, to wit, Mrs. Minnie B. Heintz, absented herself from the room while the will was being drawn, in order to attend to some duties in the kitchen. Mrs. Heintz stated that she left the room to take care of the noon day meal which was being prepared. The evidence shows that her statement is in conflict with that of the notary and the other two witnesses. If plaintiff's allegation is correct there were only two witnesses present; and, therefore, the requirements of the law have not been complied with. If this allegation is in error, then the will must be maintained, probated, and executed as the law directs. To support the proof by a reasonable certainty there must be evidence. That evidence adjusts itself in various ways. To the judge some things will be self-evident; others will be proven by senses; and, there are other subjects which address themselves to no palpable standard of truth, but to human experience of human motives.

■■ The trial judge looks at the influences which surround our fellows, and

then sounds their hearts by the plummets which he applies to his own. He is not under the same handicap as this Court, who reads a bare transcription of testimony. The trial judge, being a judge of original jurisdiction, tries, hears, and observes all that transpires in a courtroom, particularly those matters happening therein which are not susceptible of being taken down by the stenographer, such as the witnesses' manners on the stand, and their course of conduct while giving their testimony. It is because of the knowledge of these facts that this Court has adopted the rule that the judgment of the district court on questions of fact should not be disturbed unless manifestly erroneous. See, Holmes Co. v. Foret, 229 La. 360, 86 So.2d 66; Allison v. Pick, 229 La. 524, 86 So.2d 179.

▮▮▮ His Honor, the trial judge, dignified the proceedings by writing strong reasons for judgment, which are an aid in our arriving at the proper conclusion. The district judge's analysis is as follows:—

"The facts in this case show that a day or two prior to October 29, 1951, Mrs. Lydia Cooper Heintz, the testatrix, was very ill and sent for Mr. Lindsay W. McDougall, an attorney and Notary Public practicing in Covington, St. Tammany Parish, for the purpose of discussing with him the making of a will; Mr. McDougall

explained to her about making an holographic will, but she stated to him he would have to write it for her, and then after explaining to her he would have to have three witnesses, he arranged for a later date for preparing the will, and came back some two days later with his secretary, Mrs. Keen, for the purpose of drafting the will for Mrs. Heintz. Mrs. Minnie B. Heintz, whose name appears in the testimony as Mrs. J. H. Heintz, a sister of the testatrix, was in the home and it was decided to use her and Mrs. Keen as witnesses, but since it was necessary to have three witnesses, the defendant, Jared Heintz, went out and obtained Mr. Kenneth Julian to act as the third witness. It required some fifteen minutes to obtain Mr. Julian's services. The testimony of Mr. McDougall, the Notary, shows that he sat down at a table at the foot of the bed of the testatrix and wrote the will as dictated to him by the testatrix. His testimony further shows that he drafted the will from the dictation of the testatrix and in the presence of the three witnesses above named, and it was read back to Mrs. Heintz in the presence of said witnesses, and then signed by all of said witnesses, as well as himself, at one and the same time and without turning aside to any

other act. The testimony of Mr. Mc-Dougall is corroborated by both Mrs. Keen and Mr. Julian, two of the subscribing witnesses to said will. However, the other subscribing witness, Mrs. Minnie B. Heintz, who is of course, the aunt to the respective parties to this suit, testified that she was preparing a meal in the kitchen at the time and that she left the room while the will was being dictated and went into the kitchen to attend to the cooking; that she did not return to the room until a correction by the testatrix was ordered and made by the Notary, and at that time she moved a table to the foot of the bed, which table was used by the Notary in order to make the correction in the will. This witness admitted she heard the will read by the Notary to the testatrix and the other witnesses, and she further admitted she signed the will along with the other witnesses.

"Counsel for plaintiff has expended a major portion of his brief to the proposition that witnesses should be weighed rather than counted, and that positive testimony is more forceful and should be accepted rather than negative testimony. There is no question but what these are the proper legal principles to follow in the evaluation of testimony that is given in a case,

however, it is impossible for me to reach the conclusion that only the testimony of Mrs. Minnie B. Heintz is positive testimony, and the testimony of the other two subscribing witnesses, as well as the Notary, is negative; and further, under all the circumstances in this case I cannot reach the conclusion that the testimony of Mrs. Minnie B. Heintz can outweigh the testimony of the other two subscribing witnesses, as well as the Notary. I have occupied my present position in this district for a period of approximately twenty years and during that period of time the Notary, Mr. McDougall, has conducted himself in a highly honorable and highly ethical manner in his practice before this Court; he is positive that during the whole time during which the will was being dictated to him by the testatrix that all three of the witnesses were present in the room; he further testified he read the will to the testatrix in the presence of the witnesses and they signed it, and all these things were done without turning aside to any other act; he was positive that Mrs. Minnie B. Heintz had not left the room during the whole time. The testimony of both Mrs. Keen and Mr. Julian was to a like effect, and as a matter of fact, Mr. Julian, whom I

consider a man of unquestioned integrity, stated that Mrs. Minnie B. Heintz sat in front of him during the whole time and did not leave the room. While Mrs. Keen was not as positive as maybe Mr. McDougall and Mr. Julian, it clearly shows that she was under the impression that no one left the room during the whole time. The record does not reflect any reason why Mrs. Minnie B. Heintz should have testified she left the room during the drafting of this instrument, however, I do note that since Mr. Julian was not present and had to be sent for and there was a delay of some fifteen minutes while the Notary and Mrs. Keen were in the room with the testatrix, no doubt talking to her about the will, it was undoubtedly at this time that Mrs. Heintz went back to the kitchen to see about the cooking. Further than this, she testified that when she came back into the room she moved a table with a lamp on it, to the foot of the bed so Mr. McDougall could make a correction in the will as requested by the testatrix after he had written it; this is denied by Mr. McDougall and since both he and the other two subscribing witnesses testified that he wrote the will out on a table at the foot of the bed, I certainly see no reason why Mrs. Min-

nie B. Heintz would have been placing a table there for the correction to be made, for Mr. McDougall was already sitting at a table."

He further stated:—

"I most assuredly think that Mrs. Minnie B. Heintz did not testify correctly when she stated she moved a table to the foot of the bed to permit Mr. McDougall to make a correction in the will, for at the time it is obvious he was sitting there at a table, just having completed the drafting of the will itself. If her testimony was not correct on this point, it most assuredly could have been incorrect on the proposition that she left the room during the drafting of the will."

He further stated:—

"After carefully weighing all the testimony in this case, I am of the opinion that this will was received by the Notary in the presence of the three witnesses who were of lawful age and residing in the place where the testament was drafted; that it was written by the Notary as the same was dictated by the testatrix and in the presence of the three witnesses; that it was read by the Notary to the testatrix in the presence of the proper number, being three witnesses, and

signed by them, and that the said will was dictated, read and signed with the whole thing being done at one and the same time without turning aside to any other act. There is no proof in this record that any undue influence or persuasion was exercised by the defendant Jared Y. Heintz over his mother in regard to the execution of this will by her; and there is likewise no proof that she was mentally incapacitated at the time of the making of said will."

His conclusion is as follows:—

"Accordingly, since I am of the opinion that the will herein is valid, and the property was community, then Jared Y. Heintz, the defendant, will be decreed the owner of an undivided three-fourths of one-half of said property, and the plaintiff, Mrs. Alma S. Heintz, wife of Fred Gilbert, will be decreed to be the owner of an undivided one-fourth of one-half of said property, and Charles Heintz, the surviving spouse, will be decreed to be the owner of an undivided one-half interest in and to all of said property with recognition of his right of usufruct of the one-half interest of his deceased wife in said property."

Judgment affirmed.

HAWTHORNE, J., absent.