ELLIS, Judge.
This is an action for workmen’s compensation filed by the plaintiff in forma pauperis in the District Court alleging thaffi
On or about April 29, 1955 while working for Teche Oil Company which was insured by defendant for workmen’s compensation, plaintiff was unloading a truck of 100 pound sacks of fertilizer. While unloading this truck he sustained an injury to his back, the injury having occurred during the course and scope of his employment. Plaintiff alleged that he continued working until approximately May 24, 1955 when because of increased and unbearable pain it became necessary that he discontinue working and receive medical attention. Further, that the pain and suffering caused by the injury has prevented his performing his usual work or work of any character, specifically alleging that he is unable to do the type of labor that he was doing at the time of his injury.
Defendant answered admitting plaintiff’s employment, denying the injury on the date alleged but admitting plaintiff advised Teche Oil Co. of the alleged injury. Defendant further alleged that plaintiff was paid $26 per week from May 24, 1955 to November 22, 1955, stating that plaintiff *195 was not and is not entitled to any compensation beyond said date since he has been since November 22, 1955 and is now fully able to perform the same type of work and labor as that performed by him prior to his alleged injury of April 29, 1955. Defendants base the failure to pay further compensation on the advice of competent and reliable physicians and specialists, no objective symptoms being found, and allege that any disability claimed results purely from plaintiff’s own subjective statements and attitude.
Trial was had in the District Court on June 19, 1956, judgment being rendered in favor of defendant on January 21, 1957 rejecting plaintiff’s demands for written reasons assigned on January 2, 1957; from this judgment plaintiff has appealed.
There were several lay witnesses appearing for plaintiff, his only medical witness being Dr. George P. Schneider, of Lake Charles, whose testimony was elicited by deposition on April 6, 1956.
After a careful study of the record the proven facts disclosed are substantially as follows:
Plaintiff was in the employ of Teche Oil Co., whose workmen’s compensation insurance carrier was defendant herein. On April 29, 1955 as alleged, plaintiff suffered an injury to his back which he withheld from the manager of his employer until May 24, 1955 on which date he was forced to quit his work during the day, necessitating a friend’s driving him home and his wife turning over his accounts to plaintiff’s supervisor.
It is this court’s opinion that plaintiff amply proved that he suffered an accident. He testified that he had never suffered any disability prior to April 29, 1955. On that date while unloading fertilizer he felt a sharp pain in his back which forced him to stop unloading the truck, and the person to whom the fertilizer was being delivered, Isaac Dwyer, finished unloading the truck. Dwyer testified to the fact that the plaintiff was unable to unload the truck because he hurt his back. Dr. Fournet corroborated that fact that the plaintiff’s back was injured by finding an injury to plaintiff’s back in his examination on May 24, 1955. Plaintiff’s wife also corroborated plaintiff’s testimony as well as a Mr. Theriot who drove plaintiff home on May 24, 1955, the day he was unable to work any longer. Defendant has not seriously urged on appeal that plaintiff did not suffer an accident and injury.
The only question remaining to be answered is whether plaintiff is presently disabled or was disabled from returning to his employment on November 22, 1955, the date defendant discontinued compensation payments.
In order to determine this a review of the medical testimony is necessary. Plaintiff was examined on May 24, 1955 by Dr. Kenneth Fournet whose examination revealed that plaintiff had a strain of his back. (See pages 117 and 118 Transcript) His examination also revealed that plaintiff had a curvature of the spine, the scientific terminology being thoracic and lumbo scoliosis. Plaintiff could not localize the tenderness or the pain in his back to any specific area.
This doctor further testified, in effect, that the condition of plaintiff’s scoliosis lessened his capabilities of performing heavy manual labor. This was explained by the fact that a person with scoliosis is predisposed to injuries if doing heavy work. The doctor stated that plaintiff was not capable of heavy work prior to his injury and that he was as capable of working in July of 1955 as he was prior to the accident of April 29, 1955.
The essence of his testimony is that the plaintiff should never have been engaged in heavy work; the plaintiff did engage in heavy work and did suffer injury, the injury being in his lower thoracic area with muscle spasms, but this had subsided during plaintiff’s visits to Dr. Fournet.
*196 Plaintiff was referred to an orthopedic specialist by Defendant after his final examination by Dr. Fournet. The orthopedic specialist was Dr. Meuleman and his testimony was to the effect that plaintiff’s only indication of disability was in the nature of subjective complaints. His examination of September 12, 1955 revealed that there was no muscle spasm present. Plaintiff could not localize the pain or tenderness to any specific area. Had there been any tear of the trapezius muscle as claimed by plaintiff, then some muscle spasm would have been present, thus corroborating- Dr. Fournet who testified that the muscle spasm had subsided and was no longer present. He further testified that a muscle spasm is caused by a tear or irritation to a muscle and that exercise will irritate the muscle causing the muscle spasm. To quote directly from the doctor’s testimony:
“Q. Well, what other objective signs would be present with reference to a tear of the trapezius muscle? A. Well, in this particular instance here, the trapezius function is such — the position of the trapezius muscle is such that the only way that you could get that thing completely at rest would be absolutely flat on your back with your arms in this position that I’m indicating, away from the body and at rest there if you relaxed it. (The doctor indicates by placing his arm away from the body and slightly raised with the elbow bent.) That would relax it completely. Now, each and everyone of us sitting right here, that movement you just did right there, you put your trapezius in tension. You can’t beat it. As long as you’re us you’ve got to be using it. If you’re not using it, your shoulder would drop off or something like that.
“The other evidence that you would use in examination is when you attempt to use your back such as bending forward or twisting, both of them, the trapezius attaches on to those bones in the back and if I am bending forward or twisting, I’m pulling something that’s hurting on stretch. You can’t beat it. You can’t get around it. And so if two minutes before that muscle is nice and soft, the minute I put that baby on a stretch, it’s going to sing out and tighten up. So, those to my mind would be the other signs that you’d consider.
“Q. That would indicate pain. It would cause pain. A. Definitely, yes.
“Q. But it wouldn’t change the general outline of the back? A. It would precipitate some involuntary tightness of that muscle to protect itself.
“Q. Invariably? A. If you’ve got something big enough to be hurting, I’d say not invariably, I’d say definitely, for sure.”
Opposed to this we have lay testimony on plaintiff’s behalf that he is completely unable to work, this evidence being given by plaintiff’s wife and his brother.
The plaintiff also introduced into the record the deposition of Dr. Schneider, an orthopedic specialist, from Lake Charles, La., who examined him on December 6, 1955, seven and one-half months after the injury. His testimony is based on subjective symptoms alone, those being that his examination of plaintiff showed findings “commensurate with a partial tear of the origin of the left trapezius muscle”. The plaintiff had complained of “marked local tenderness at the level of the eighth dorsal vertebra in the mid-lme, quite marked to the left and moderate to right.”
On cross examination Dr. Schneider stated in answer to question:
“Q. Now Doctor, the record will show that on May 24, 1955 he went to Dr. Fournet, whom I mentioned above, and made no complaint of any definite point of acute tenderness, and I ask *197 you if that is consistent with the complaint that he made to you with reference to the tenderness? A. It would appear to me that it would be inconsistent that he would be able to delineate his area of tenderness as accurately as at a later date as he should have been able to at an earlier date when the previously mentioned physician examined the patient.
* $ $ * * *
“Q. * * *, is it not correct that he would have been able to delineate that area of pain better and more specifically on May 24, 1955, when he quit working? A. I feel that he should have been able to.”
The doctor also testified that there was no specific objective findings as muscle spasms or x-ray finding to substantiate plaintiff’s complaint of pain . and disability. The strongest testimony on behalf of plaintiff was that a person could be suffering pain and there would be no objective signs or reasons for it.
It is a well settled rule that a plaintiff in workmen’s compensation suits must bear the burden of proof. In discharging the burden of proof the plaintiff must do so by a preponderance of evidence and with that degree of legal certainty as required by law. Green v. A. C. Campbell Construction Co., La.App., 78 So.2d 54. In order to establish his claim in a workman’s compensation suit plaintiff may not base his action on conjecture and probability. Davis v. Swift & Co., La.App., 68 So.2d 670.
In applying these rules set forth in the cases cited above to the case at bar we find that two doctors, one an orthopedic specialist, have testified based on several examinations over an extended period of time at great length on defendant’s behalf to the effect that the plaintiff was not suffering any disability after November 22, 1955. In fact, Dr. Fournet stated that in his opinion the plaintiff was able to return to work in July of 1955. The plaintiff has met this positive testimony with the impression of Dr. Schneider, based on one examination only and chiefly upon subjective symptoms furnished by the plaintiff; which impression is somewhat contradicted by the earlier medical history connected with the accident.
Since the findings of fact made by a trial court are not to be disturbed on appeal unless manifestly erroneous, Heintz v. Heintz, 231 La. 535, 91 So.2d 784; Holmes Co. v. Foret, 229 La. 360, 86 So.2d 66; Allison v. Pick, 229 La. 524, 86 So.2d 179, the judgment of the district court is hereby affirmed.