MOISE, Judge.
This is an appeal from a judgment of the trial court decreeing a divorce a vinculo matrimonii between the parties, ordering the defendant to pay plaintiff alimony of $200 per month, casting the defendant for $1,100 attorneys’ fees to be paid out of the community, and enjoining the defendant from alienating, encumbering, selling, or otherwise disposing of the community which existed between him and plaintiff.
Plaintiff sued defendant for a divorce on the ground of adultery committed by him with a named co-respondent on June 5, 1956. Her evidence to prove the alleged adultery is to the effect that on June 5, 1956, at approximately 9:50 P.M., defendant, accompanied by the co-respondent, drove his yellow two-door Chrysler automobile into the driveway of his combined business and home on the Airline Plighway out of Baton Rouge, Louisiana, and parked directly in front of his garage; and that defendant and the co-respondent engaged in ardent love making in the front seat of the car, climaxed by an act of adultery.
On the night herein involved, Lawrence W. Hall, a private detective employed by plaintiff, telephoned her from a pay station located on property adjoining defendant’s garage. He advised plaintiff that he and his assistants had followed the defendant and the co-respondent riding around Baton Rouge and that the couple were at that moment parked at the defendant’s establishment. Plaintiff and her mother immediately drove there, arriving within approximately twenty minutes. Entering through an indirect route, they drove their unlighted car in the back of defendant’s property. They alighted from the car and placed themselves in positions to observe the actions of the defendant and the corespondent. Plaintiff stated that she was within 20 feet of defendant’s car. In the meantime, Mr. Hall and his assistants had walked over to the Wall property, locating themselves opposite the position taken by plaintiff and her mother. There was no direct lighting on the premises, and all observations were made by the lights of passing cars.
Plaintiff, her mother, Mr, Hall, and his assistants, all testified that they observed the defendant and the co-respondent commit an act of adultery on the front seat of the car. On interrogation, they stated that they did not see ■ direct physical contact, but that all motions of the defendant, who extended himself over the co-respondent, indicated the commission of adultery. Mr. Hall and his assistants testified that they did not see the defendant unbutton his clothes. They further testified that the co-respondent was leaning against the door, and that her head could be seen. Plaintiff and Mr. Hall definitely recognized and identified Mr. Wall, the defendant, and Mr. Hall and his assistants identified the co-respondent as the party Mr. Wall called for earlier in the evening. When the defendant and the co-respondent left the Wall property, the detectives followed them to the co-respondent’s home.
On trial, plaintiff and the detectives identified, without equivocation, the defendant and the named co-respondent as the parties who committed the alleged act of adultery on the night of June 5, 1956. They also identified the car in which they were seated as being Mr. Wall’s car.
*213 The co-respondent admitted that she went for a ride with the defendant on the evening of June 5, 1956, but emphatically denied having had any sexual relations with him. She affirmatively testified that the defendant brought her home at 9:00 P.M., and this testimony is corroborated by that of her mother, who lived with her; by that of her sister, who was visiting in her home "that evening; and by that of her sister’s ibrother-in-law, who had driven the sister •over to the house. These witnesses stated rthat they remembered the hour of the co- ■ respondent’s return because it was at the ■conclusion of an especially interesting television program they often watched. The ■co-respondent’s sister testified that she remembered that at the time her sister entered the house she was preparing to return home with her three children. The date was prominent in the minds of these witnesses, because the sister’s children had received their report cards that day and ■plans were being made_ for a vacation. It was also the night on which the co-rcspond-•ent’s mother attended church services weekly, and the sister and the sister’s brother-in-law had taken her to church and ■called for her before the particular television program.
The defendant denied having committed adultery with the named co-respondent. He "testified that he took her for a ride on the night of June 5, 1956, brought her home at about 9:00 P.M., and reached home at about 9:30 P.M. His testimony is vague, and he could not recall engagements with the corespondent other than the one on June 5, 1956.
“Due to the secrecy attendant upon the act of adultery, it can rarely be established by direct evidence, and the firmly established jurisprudence is to the effect that, ‘In actions for divorce, courts must take such evidence as the nature of the case permits, circumstantial, direct, or positive, and bring to bear upon it the experiences and observations of life, and thus weighing it with prudence and care give effect to its just preponderance’. Gauthier v. Matthews, 191 La. 326, 185 So. 272; Guidry v. Allemand, 216 La. 288, 43 So.2d 611, and authorities therein cited.” Massa v. Thompson, 220 La. 278, 56 So.2d 422, 423. See, also, Kieffer v. Heriard, 221 La. 151, 58 So.2d 836.
There is a conflict in the testimony of plaintiff’s witnesses and the testimony of defendant’s witnesses. However, we believe that the weight of the evidence is with the plaintiff. Defendant’s denial and the alibi of the co-respondent are not as strong as the testimony of plaintiff and her witnesses to the effect that they saw the defendant and the named co-respondent commit the act of adultery.
The trial judge is in a better position than we to judge the credibility of witnesses. In Gilbert v. Heintz, 231 La. 535, 91 So.2d 784, 786, we stated:
“The trial judge looks at the influences which surround our fellows, and then sounds their hearts by the plummets which he applies to his own. He is not under the same handicap as this Court, who reads a bare transcription of testimony. The trial judge, being a judge of original jurisdiction, tries, hears, and observes all that transpires in a courtroom, particularly those matters happening therein which are not susceptible of being taken down by the stenographer, such as the witnesses’ manners on the stand, and their course of conduct while giving their testimony. It is because of the knowledge of these facts that this Court has adopted the rule that the judgment of the district court on questions of fact should not be disturbed unless manifestly erroneous. See, Holmes Co. v. Foret, 229 La. 360, 86 So.2d 66; Allison v. Pick, 229 La. 524, 86 So.2d 179.”
Since there is no manifest error shown in the instant case, the judgment of the district court will be affirmed.
*214 “ * * * It is well established in the jurisprudence that, in the absence of manifest error, we will not reverse the judgment of the trial court upon a controversial and disputed question of fact. Recent divorce cases recognizing this rule are Arnold v. Arnold, 186 La. 323, 172 So. 172; Rayner v. Rayner, 216 La. 1099, 45 So.2d 637; Moser v. Moser, 220 La. 295, 56 So. 2d 553. After reading the testimony adduced at the trial of this case, we cannot say that the trial judge committed manifest error * * * ”. Clay v. Clay, 221 La. 254, 59 So.2d 180, 181.
For the reasons assigned, the judgment of the trial court is affirmed. Defendant is to pay all costs.