Isaac Frank Harrosh alleges a contract of employment with defendants, Walter W. Fife and Fife Brothers Health Association, a corporation, for what he contends was a fixed term and at a stipulated though regularly increasing rate of pay, and he avers that all that was due him for services actually rendered has not been paid; and also that, one month prior to the expiration of the term of the contract, he was discharged without just cause. He sues for the balance alleged to be due for services actually rendered and also for what he would have earned for the last month, had he not been discharged.
Defendants, by exception of no cause of action, raise the contention that plaintiff's petition does not show a contract of employment for a fixed term, but merely alleges employment by the week, and they maintain that, since plaintiff, by his petition, shows that he was employed by the week, they were within their rights in discharging him — even without cause — at the end of any weekly period.
This exception was overruled and defendants then filed answer in which they averred that plaintiff had been employed by the week, had been paid all that was due him and had been discharged for cause, and they especially averred that he could not have been employed for the term which he contends was contemplated by the contract, since he does not allege that the contract of employment was authorized by resolution of the board of managers of the corporation, which, they aver, is necessary because of a provision in the charter of defendant corporation to the effect that "all employees, other than officers of the company, * * * shall hold their employment by the month, unless by special resolution of the board of managers".
From a judgment against them for the amount prayed for, defendants have appealed.
The exception of no cause of action was properly overruled. The petition alleges that a part of the amount claimed represents unpaid salary actually earned, and whether or not Fife, in employing Harrosh, exceeded his authority, and whether or not, as a matter of fact, he did employ him for a fixed term, is not important in considering the question of whether, during the time in which Harrosh was actually employed and rendered services, he earned salary which has not been paid. If the petition sets forth a cause of action on any item claimed, an exception of no cause of action should properly be overruled.
Harrosh styles himself as a physiotherapist. Fife Brothers Health Association is a corporation domiciled in this state and organized under the non-trading or non-profit corporation laws and, according to the record, is operated by one Walter W. Fife, its president and general manager. The business of the corporation and of Fife seems to be the treatment of various complaints and ailments of human beings by manipulation and massage and by the application of heat, and also by the giving of colonic baths and flushes. Harrosh was admittedly employed to assist in the rendering of such services to patrons of Fife and of the corporation. The employment was by verbal contract with Fife and was made just before the end of June, 1939. Plaintiff commenced work on July 5, 1939. The stipulated salary was to be $15 per week for the first month, then $20 per week for the second month, and $25 per week for the third month. Near the end of July, Harrosh was offered a position with another establishment and he told Fife of this offer and of his inclination to accept it. Up to this point there is no conflict in the testimony.
Harrosh states that Fife advised him to reject the other offer and that he, Fife, would raise his salary $5 per week each month until the weekly salary should amount to $50, and he contends from this that the new contract was for a fixed term *Page 325 
at least; that is to say, that he could not be discharged without lawful cause until his salary had reached $50 per week and had remained at that figure for one month. Fife says, however, that there was no agreement to raise the salary at any particular time and that all that he told Harrosh was that he would raise his stipend whenever he could prove that he could "deliver the goods" and that at all times it was understood that the employment was only by the week. Harrosh continued at work and, during the next three months — November and December, 1939, and January, 1940 — he was paid $30 per week, but he was discharged before he could render any services for the month of February, 1940.
Of course, if there was no term fixed when the employment contract was entered into and if Harrosh was paid by the week, he was subject to discharge at the end of any week without the necessity that any cause be assigned. In Pitcher v. United Oil 
Gas Syndicate, Inc., 174 La. 66, 139 So. 760, 761, the Supreme Court said:
"* * * if the contract * * * was only for an indefinite and not for some fixed or readily ascertainable period, then it might be terminated at the will of either party."
If, on the other hand, the contract was for a fixed term, then, during that term, there could be no discharge of the employee except for cause, and we find it appropriate to say here that Fife's charge that there was cause for the discharge of Harrosh is not in the slightest degree substantiated.
In support of the claim of Harrosh that Fife promised him a raise in pay of $5 a week each month until the weekly rate should be $50, we find the testimony of Mrs. Maloney, who also had been an employee at the time when the employment began and who says that she heard Fife tell Harrosh that "he would raise him $50.00 a month until his salary would be $50.00 a week". Obviously, what she meant is that he would raise him $5 each week until his weekly salary should be $50, for she corrected herself during her testimony and, in fact, had just in the preceding statement said: "He promised him that for every month that he worked, that his weekly pay would be $5.00 more". And later in her testimony she said: "He promised him a raise until he got $50.00 a week."
Fife attempts to destroy the effect of Mrs. Maloney's testimony by showing that there was considerable animosity between them and by attempting to show, also, that the conversation between Harrosh and himself was in his private office and could not have been overheard by Mrs. Maloney, who was, or should have been, in the "colonics" department some distance away. The record leaves no doubt that the relationship between Fife and Mrs. Maloney was far from harmonious, but it also shows that it is quite possible that she might have heard the conversation since the partitions in the establishment did not reach the ceiling, being only a little over six feet in height, and since Mrs. Maloney states that she was not in the "colonics" department at the time, having walked out into the hallway adjacent to Fife's office in order that she might drink some milk away from the rather objectionable surroundings of the "colonics" department.
And we think it quite unlikely that Harrosh would so readily have yielded to Fife's persuasion had there been no definite promise of regular raises in pay and had there been no fixed term contemplated, for he had gone to the other establishment, tempted by an offer of steadier employment and more certain increase in pay, and it is not reasonable to expect it to be believed that he had rejected the other offer without obtaining from Fife a promise of better pay and more certain employment than he already had. At any rate, the judge a quo seems to have believed that Fife made him the definite offer which he contends was made, and, from this record, we cannot say that the finding is obviously erroneous.
There is one undisputed fact which requires explanation and that is that the weekly salary of Harrosh was raised until it reached $30 and was not raised after that. Fife points to this as proof that there was no contract for regular $5 per week raises and he states that it was increased to $30 only because of unusual domestic expenses of Harrosh and that it was not raised as the result of the original contract.
Harrosh, on the other hand, explains that it was raised to $30 because of the original contract and that it was not raised above $30 because Fife told him each week that the business was so bad that he did not have the money, but that, if he would wait until the first of the year, he would make up all the back payments. *Page 326 
We think that the truth of the matter is that Fife agreed to give Harrosh the raise of $5 per week until the weekly pay should be $50 and that he did not do so because of difficulty in finding the necessary amount each week.
But defendant asserts that, whatever may have been the agreement by which Harrosh was continued in their employ, there could have been no contract for a term longer than one month for the reason that the charter of the defendant corporation provides, in Article 5, that all employees except officers "shall hold their employment by the month unless by special resolution of the board of managers."
This provision was quoted from the answer of defendants and we do not find a copy of the charter in the record, though it was offered in evidence on the trial. Assuming that the charter is before us and that it does contain the above-quoted language, that provision would avail nothing to the company under the circumstances shown here for two reasons: First, because it is obvious that a general manager of a corporation such as this purports to be must be presumed to have the necessary authority to employ the usual employees needed to carry on the business of the corporation and to fix their terms of employment — of course within reasonable limits — and, second, because, as a matter of fact, beyond any doubt at all, the so-called "corporation" did not at any time operate as such and was merely a trade name under which Fife operated his personal business.
In American Jurisprudence, Volume 13, section 990, page 880, appears the following:
"Where the president is also the general manager or active business head of the corporation, there is practically no dissent from the view that, ordinarily, contracts of employment or agency are within the scope of his authority."
We think it would be entirely unreasonable, in the case of an ordinary employee of minor importance, to hold that such a charter provision should have the effect contended for here.
In Corpus Juris Secundum, Volume 19, Corporations, § 1048, page 552, appears the following:
"One employed by a general manager who has apparent authority to enter into the contract of employment is not bound by private restrictions on manager's authority to employ unless he has notice of them."
In Marshall on Private Corporations, section 356, page 952, it is stated:
"* * * like a natural person, a corporation is liable for the acts of its officers and agents which, although unauthorized, are within the apparent scope of their authority, and it may become liable for unauthorized acts of ratification."
In Fletcher's Cyclopedia of the Law of Private Corporations, Vol. II, chapter 2, section 459, page 287, we note the following:
"* * * if a statute or the charter expressly or impliedly limits the powers of an officer or agent the person dealing with him must take notice thereof, `provided' the act is not within the apparent powers of the officer or agent."
In his Handbook on the Law of Private Corporations, Robert S. Stevens states:
"When the corporate representative acts within the apparent scope of his authority, he may bind the corporation, whether the particular transaction be intra vires or ultra vires. Even in jurisdictions where persons dealing with corporate agents are charged with notice of the limitations on corporate authority, they are entitled to assume that, as to all matters of `indoor management', the corporate procedure has been regular. They are not entitled to the benefit of this presumption unless, in dealing with the corporation, they acted in good faith, had no knowledge of an irregularity, and were not negligent in disregarding facts which put them on inquiry as to irregularities.
Although, in general, persons dealing with corporations are bound by charter limitations, as to an employee of minor importance such a charter provision should properly be considered as a private restriction. Therefore, since, ordinarily, a general manager operating a corporation has apparent authority to enter into such a contract of employment, the plaintiff here was justified in assuming that such authority existed.
In Kramer v. Dixie Laundry Company, 8 Orleans App. 284, this court recognized the distinction between the apparent authority of the president of a corporation and the apparent authority of the general manager, holding that a general manager who operates the corporation has authority to enter *Page 327 
into contracts of employment which contemplate the carrying out of the purposes for which the corporation is organized.
In Gueydan v. T.P. Ranch Company, 156 La. 397, 100 So. 541, 543, the Supreme Court said:
"It is a familiar principle in law that it is not always necessary to show the authority of an officer of a corporation by a resolution of its board of directors. A corporation may not, any more than an individual, reap the benefits flowing from the acts of its officers and repudiate the obligations arising from the same acts. Berlin v. Cusachs, Ltd., 114 La. 744, 38 So. 539; Gair [Co.] v. Columbia Rice Co., 124 La. [193], 194, 50 So. 8; Boudreaux v. Feibleman, 105 La. [401], 404, 29 So. 881."
This principle is applicable here in view of the fact that the evidence shows that Harrosh had an offer of what he considered better employment and rejected it on the solicitation of Fife and on the promise that, if he should remain with Fife, the salary raises would be forthcoming and the term of employment would be lengthened. If the corporation and Fife desired that Harrosh continue in their employ and, by a promise of a longer term of employment, persuaded him to reject the other offer, neither of them can now be heard to contend that Fife had no authority to make the offer which we think he did make.
Furthermore, as we have said, the record shows beyond any doubt whatever that the corporation known as "Fife Brothers Health Association" did not function as a corporation. Fife, when asked who the members of the board were, did not know and stated that the information could be obtained from his attorney. He did say, however, that no meetings of the said board had been held and the record shows beyond any doubt that for a very long time the business of the corporation had been run entirely under the personal management of Fife without any board meetings or resolutions of any kind.
We have given considerable thought to the question of whether or not both Fife and the so-called "corporation" should be held liable and have concluded that they should be so held. The record shows that, although a part of the business is operated by Fife as the general manager for the corporation, another part was operated by him as his private venture. And the record shows, too, that Harrosh was employed indiscriminately in both. It would not be possible to say how much of his time was spent in one and how much in the other. Under all of the circumstances, we think it correct that the judgment should have been rendered against both.
Therefore, the judgment appealed from is affirmed.
Affirmed.