78 So.2d 208 (1955)
A. J. BARTOLOTTA
v.
Mike GAMBINO.
No. 20408.
Court of Appeal of Louisiana, Orleans.
February 28, 1955.
*209 Henry L. Oulliber, Jr., Robert J. Pitard, M. F. Driscoll and James Flannagan, New Orleans, for plaintiff-appellant.
Harold L. Molaison and Robert I. Broussard, Gretna, for defendant-appellee.
McBRIDE, Judge.
Plaintiff seeks to recover $270.66 (plus interest and his attorneys' fee) allegedly the balance due on defendant's note for $406. The note is secured by chattel mortgage and was given in representation of the deferred portion of the purchase price of three air conditioning units. While the act of sale and chattel mortgage stipulates that the air conditioning units are "new and unused," the truth of the matter is that they were secondhand units.
Defendant admits the execution of the note but pleads a failure of consideration because the air conditioning units are said to have been mechanically defective and not suitable for the use for which they were purchased. Defendant also reconvened claiming $199.34, which he paid plaintiff as the "down payment" on the purchase price and the first installment on the note.
After a trial of the issues thus presented by the pleadings, the court below dismissed plaintiff's suit and rendered judgment for defendant on his reconventional demand for $199.34 and plaintiff has appealed.
To the reconventional demand plaintiff interposed an exception of no cause of action which is grounded on defendant's failure to allege that he had ever returned the air conditioning units or had made tender *210 thereof to plaintiff. The exception was referred to the merits of the case by the trial judge but was never passed upon. Plaintiff strenuously urges the exception before us.
Whether a plaintiff may level an exception against a reconventional demand might prove to be an interesting question in view of C.P. art. 329 which provides that neither replication nor rejoinder will be admitted. Replication is entirely unknown to the law of Louisiana and under our system a plaintiff may, without written pleading, always urge any objection to anything the defendant sets up in the way of a defense.
But assuming for the sake of argument that the plaintiff has the right to interpose his exception to the incidental demand, still we do not think that the exception should be sustained and the reconventional demand dismissed. The exception is directed merely at a deficiency of allegations, i. e., that tender upon plaintiff was made.
The tendency of modern practice is to yield as little as possible to technicalities and to be liberal in upholding substantive rights instead of subtle technicalities, and to allow amendments to pleadings that fail to state a cause of action as the result of insufficient allegations. When an exception of no cause of action is founded on an insufficiency of allegations, the courts are to regard it as an exception of vagueness and although the exception is meritorious and is sustained, the pleader will be entitled to amend so as to supply the want of allegations of fact. Reynolds Metal Co. v. T. L. James & Co., Inc., La.App., 69 So.2d 630.
However, in no event do we believe that the exception should be maintained, because the reconventional demand has been effectively enlarged by certain evidence produced by defendant and which was admitted at the trial without having been objected to by plaintiff's counsel.
In numerous cases and in a variety of situations it has been held that the reception of evidence inadmissible under the pleadings and which is unobjected to has the effect of enlarging the pleadings so as to include the issue so raised. 6 La.Dig., 2d Ser., Pleading,
It is shown by the record that several complaints regarding the mechanical deficiencies of the air conditioning units were made not only by defendant himself but also on his behalf by his mechanic, and the defendant testified that on one occasion when he spoke with plaintiff by telephone that the latter told him:
"`If you are having that kind of trouble with the machines, best thing for us to pick it up and return your money.' So, I says, `Well, if you feel that way, it's perfectly alright with me.'"
We are also convinced after reading defendant's testimony that he expressed to plaintiff the willingness to return the units provided plaintiff would refund to him the money which he had paid on the account.
Under circumstances such as these, the making of a formal tender was not sacramental. For a charge of $10 per unit defendant installed themone in defendant's office, one in defendant's home, and one in the residence of defendant's mother, and plaintiff knew at all times that he was at liberty to remove them and take them to his place of business any time he desired, as defendant had consented to his doing so. In the recent case of Westside Appliance Company v. Krause, La.App., 78 So.2d 206, we said:
"There is no doubt that where a purchaser desires to rescind the sale because of defects in the article purchased, the article must be returned, but under such circumstances as appear here, where the article is installed by the seller and the seller is notified that it must be removed by him and does not do so, the purchaser has complied with his obligation in tendering the article and in waiting for the seller to remove it."
*211 Plaintiff also contends that failure of consideration was not the proper plea to be made by defendant; that defendant's only remedy under the law was either to bring an action to annul the sale on the grounds of redhibition or set up the redhibitory vices of the thing by way of specific defense to the suit. It is difficult to follow this line of reasoning and we are inclined to believe that counsel erroneously labor under the impression that the suit is being defended on the theory that there was no consideration at all for the note. Defendant's position is that while he admits that there had been a consideration, that consideration has failed due to the vices which manifested themselves in the subject of the sale of such nature that the consideration for the note was totally destroyed. If the air conditioning units were affected by such vices as defendant alleges, then there was a failure of consideration and defendant's plea was a proper one to be urged in defense of plaintiff's suit on the note.
The record shows that soon after the units had been installed mechanical troubles made their appearance. It seems that defendant called upon plaintiff to correct the defects but he refused to do anything on the ground that defendant had not paid a fifteen-dollar service charge and was not entitled to any service on the three units. Parenthetically, the written contract of sale makes no mention whatever of such service charge. Plaintiff states that he informed defendant the only warranty that went with the machines was that the parts were guaranteed for one year and that there would be a replacement of any parts that proved to be defective.
When plaintiff refused to do anything toward remedying the defects in the units, defendant employed an independent air conditioning mechanic to look into the matter for him, and according to the testimony of this meachanic the three-quarter ton unit which had been installed in defendant's office and the one-half ton unit which had been installed in the home of defendant's mother were defective and would not operate correctly. The trouble with the three-quarter ton unit in defendant's office was that it had a "hum" in it and the mechanic returned it to plaintiff's establishment and there an employee of plaintiff replaced the unit with another which the mechanic installed in defendant's office, but like the original the replacement unit proved to be defective. The complaint was that it would cool the air for a period of about half an hour but then would start to emit warm air. The one-half ton unit, that is, the one which had been placed in the home of defendant's mother, was defective in that it would not cool the air at all. The mechanic likewise brought this unit back to plaintiff's establishment where again plaintiff's employee replaced it with another unit but of a different capacity, the replacement being a three-quarter ton unit which was also defective as it did not put out cool air and was minus a shock absorber which caused the windows to vibrate.
The testimony in the case is very sketchy and unsatisfactory but after a most careful study and scrutiny of all that was said by the witnesses we were able to deduce the above recited facts. We do not believe that the defendant would have purchased these air conditioners had he known of their true condition.
Counsel for plaintiff argue strenuously that there were no redhibitory vices in the two units and point to the testimony of defendant's mechanic that "they could have been repaired with parts." The argument is made that plaintiff was at all times willing to supply whatever parts were necessary to defendant, but that defendant failed to avail himself thereof and has himself to blame for his dilemma. We do not think that it was the duty of the defendant to have the two units repaired for the simple reason that the seller warranted that the thing sold was fit for the purpose intended, and if the units were unfit then it was the duty of the plaintiff to have remedied them. A buyer need not show the particular cause of defects which may make the thing sold unfit for the intended purpose, particularly when the thing is complicated machinery; all that the buyer need show is the actual existence of such defects *212 as render the article unsuitable for its intended uses. Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871.
Plaintiff also suggests that the fault did not lie in the units themselves but stems from an inadequate amount of electricity in defendant's premises, but there is nothing shown by the evidence which would support this theory. The plaintiff himself nor any employee of his ever visited defendant's premises for the purpose of looking into the matter and the statement of plaintiff, to say the least, is merely an assumption on his part.
In brief and in argument counsel for defendant contend that all three of the units which, of course, includes the one installed in defendant's home, were all defective, but we have searched the record in vain for any evidence showing that the three-quarter ton unit which had been installed in plaintiff's home failed to operate. This unit does not seem to have been mentioned as possessing any specific defects; in the absence of testimony to the contrary, we must assume that there were no defects in it.
So, therefore, the three-quarter ton unit, which was originally installed in plaintiff's office and the one-half ton unit which had been installed in the home of defendant's mother were both defective, else they would not have been replaced by plaintiff, and we are convinced that the two units which replaced the originals were just as defective as those which had been returned to plaintiff.
Plaintiff himself adopted the position, and his counsel reiterate, that he was not bound legally to do anything toward remedying the vices in the units and that the only obligation which devolved upon him, in the absence of defendant's having paid a service charge, was to replace any defective parts and that the onus was then on defendant to have the parts installed in the units at his own expense and by his own mechanics. We cannot at all agree that this position is sound. It is true that there was some mention made by witnesses on both sides that plaintiff had agreed to warrant all parts for a period of one year, but there is nothing showing that the plaintiff restricted his obligation of warranty to that narrow extent. LSA-C.C. art. 2475 provides:
"The seller is bound to two principal obligations, that of delivering and that of warranting the thing which he sells."
Under the quoted codal article the seller is bound not only to deliver the thing sold but impliedly warrants it to be fit for the use for which it was bought; in other words, there is a warranty against hidden defects. Henderson v. Leona Rice Milling Co., 160 La. 597, 107 So. 459; E. Levy & Co. v. Pierce, La.App., 40 So.2d 818; Kuhlmann v. Purpera, La.App., 33 So.2d 84; Fabacher v. Ghisalberti, 18 La.App. 599, 139 So. 70.
In this case we are confronted with a very unusual situation. The sale and chattel mortgage fully describes the three air conditioners which were the subject of the sale by motor or model number and serial number of each unit. We know that two of the conditionersthe one-half ton and one of the three-quarter ton units were replaced by others and that the replacements are as equally defective as were the original units and that plaintiff was bound to a warranty of their fitness. We also know that one of the three-quarter ton units has not been shown to be defective and there is no obligation now resting on plaintiff with respect to this particular unit. But we are at a complete loss to identify this latter unit.
Under this circumstance, we think the case a fit subject for remand to the district court. An appellate court should remand the cause whenever the nature and extent of the proceedings require it, and such action is largely within the court's discretion and should be exercised according to the peculiar exigencies of the particular case.
On retrial of the case below evidence should be received as to the identity of the original conditioner which was installed in defendant's home, and the matter is limited to that inquiry. The trial *213 judge is then instructed to proceed to render judgment in plaintiff's favor on the note to the extent of the purchase price of the air conditioner in which there were no defects, plus interest and attorneys' fees, and that defendant have judgment on his reconventional demand for the total of the amounts paid plaintiff; plaintiff is to be recognized as the owner of the two defective units.
Therefore, for the above and foregoing reasons, the judgment appealed from is reversed in toto and the matter is now remanded to the district court for further proceedings according to law and not in any wise inconsistent with the views expressed above.
All costs are to await a final determination of the case.
Reversed and remanded.