140 So.2d 397 (1962)
Percy W. BAKER
v.
UNION TANK CAR COMPANY.
No. 5527.
Court of Appeal of Louisiana, First Circuit.
April 9, 1962.
Rehearing Denied May 16, 1962.
Certiorari Denied June 15, 1962.
*398 Breazeale, Sachse & Wilson, by H. P. Breazeale, Jr., Baton Rouge, for appellant.
Robert W. Williams, Jr., Baton Rouge, for appellee.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
Plaintiff, Percy W. Baker, instituted this action against his employer, Union Tank Car Company, to recover wages due for plaintiff's alleged discharge in violation of the employment contract existing between plaintiff and defendant. In the court below judgment was rendered in favor of plaintiff and against defendant ordering defendant to pay plaintiff the sum of $145.00 each two weeks commencing June 1, 1960 until plaintiff's reinstatement in the employ of defendant in the classification of car repairer (plaintiff's former position) or until plaintiff's regular retirement date. From said adverse judgment defendant has taken this appeal.
The events giving rise to this litigation are, for the most part, without dispute between the litigants at bar.
Defendant Union Tank Car Company (hereinafter sometimes referred to simply as "defendant") operates establishments in East Baton Rouge Parish (as well as certain other locations), for the repair, maintenance and rebuilding of railroad tank cars. Plaintiff was employed by defendant at the latter's shop in East Baton Rouge Parish as a car repairman for a period of approximately 20 years prior to May 5, 1960, on which date plaintiff was discharged by defendant.
For several years prior to plaintiff's discharge, defendant had, from year to year, entered into a collective bargaining agreement or "labor union contract" with United Tank Car Workers of America, Local No. 3 (hereinafter sometimes referred to and designated simply as the "Union") a local independent labor union of which plaintiff was a member in good standing on May 5, 1960, and which said union was on said date of May 5, 1960 duly recognized by defendant as the bargaining agent for all production and maintenance employees in defendant's Baton Rouge shop. By virtue of annual contracts entered into between defendant and the union (known as collective bargaining agreements), the hours of employment, wages, working conditions and other terms of employment which govern the relationship between defendant and those employees of defendant represented by the union were fixed and stipulated. The last written collective bargaining agreement between defendant and the union was entered into February 1, 1959 and by its own terms expired February 1, 1960.
Upon expiration of the aforesaid bargaining agreement on February 1, 1960, negotiations then in progress between defendant and the union with respect to renewal of the contract were, by mutual consent of said parties, continued with the view of ultimately arriving at a new accord. Pending such negotiations defendant maintained its plant in operation and its employees continued work as usual.
*399 Although, as previously stated, the principal facts are not in dispute between the parties, a controversy does exist with respect to the circumstances under which defendant continued operation of its facilities. In this regard plaintiff contends that in order to stabilize the relationship of the parties and avoid a work stoppage, defendant entered into an agreement with the union to the effect that the terms and provisions of the expired collective bargaining agreement which ended February 1, 1960, would, by mutual agreement, continue in force and effect until such time as defendant notified the union differently. On the other hand, defendant contends that upon expiration of the bargaining agreement which ended February 1, 1960, defendant agreed only to use the expired contract as a "guide post" with the specific understanding defendant was free to deviate therefrom unilaterally at will and without notice to either the union or any individual employee. It is undisputed and agreed that the expired contract between defendant and the union contained inter alia the following provision:
"Article VIISeniority, Section 4 (a)An employee's seniority and his employment relationship with the Company, shall be terminated when the employee:
"* * * (4) is absent from work for three (3) consecutive work days without notifying the Company, unless it is physically impossible for the employee to so notify the Company."
Following the February 1, 1960, expiration of the contract between defendant and the union, more specifically, in late April, 1960, defendant promulgated and made known to an assembly of its employees that a "table of standard penalties" was being immediately placed in effect and would henceforth and until further notice govern the relationship between defendant and its employees and that the following provision constituted part thereof:

CODE NATURE OF OFFENSE Numerals in these columns denote
 days employee will be suspended
 1st 2nd 3rd
 offense offense offense
-----------------------------------------------------------------------
M-7 Repeated absence from duty or Warning 5 10
 tardiness, without notice to or
 permission from Superintendent
 or Foreman

On May 2, 3, and 4, plaintiff absented himself from work but returned and reported for duty on May 5, 1960, and after having worked an hour or two was summoned by his foreman and notified of his discharge for violation of Article VII 4 (a) (4) of the expired contract of February 1, 1959. Plaintiff freely admits he did not notify defendant of his intention to be absent from work on May 2, 3 and 4, but contends that knowledge by his foreman, Robert E. Arnheim, Sr., of certain circumstances constituted notice as intended by the hereinabove cited provision of Article VII of the union contract.
The theory of plaintiff's case as we understand it, is that whereas plaintiff is not herein suing upon the union contract as such and is not therefore asserting rights litigable under the National Labor Relations Law, nevertheless, in large measure, the relationship of plaintiff and defendant is to be governed by Federal laws and jurisdiction governing labor and employment. Plaintiff concedes that he has no *400 justiciable rights under Federal law and that the relief to which he is entitled may be afforded, if at all, in the state courts but contends, however, that Federal interpretation of applicable principles if not binding upon this court should be accepted and adopted by the courts of this state in enforcing plaintiff's rights herein.
As succinctly and clearly as we are able to express plaintiff's views, we understand the position of esteemed counsel for plaintiff to be that Federal law and jurisprudence, particularly the decision of the U. S. Supreme Court in J. I. Case Co. v. N. L. R. B., 321 U.S. 332, 64 S.Ct. 576, 88 L.Ed. 762, has in effect established that every contract of employment wherein a collective bargaining agreement between a labor union and employer is involved, in essence consists of two separate but interrelated contracts or agreements between the employer and each of his individual employees, namely, (1) the contract or trade agreement between the bargaining agent (union) and the employer; and (2) the contract of hiring or employment between each individual employee and the employer. Learned counsel for plaintiff reasons that according to the J. I. Case Co. decision, supra, the individual hiring contract between employee and employer, standing alone, usually consists merely of the hiring but that the hiring agreement is expanded and conditioned by the collective bargaining agreement negotiated by the union for the benefit of its members inasmuch as each member of the collective bargaining agency (union) becomes a third party beneficiary of the terms of the bargaining agreement between employer and union. According to counsel, the contract, terms and provisions are superimposed upon and, therefore, became part of the hiring agreement with the result that under Federal law the individual employment or hiring contract cannot be less favorable to the employee than the terms of the trade agreement existing between the company and the union. Illustrious counsel also asserts the law in the Federal and common law jurisdictions to be settled to the effect that upon expiration of a company-trade union agreement the terms thereof inure to the benefit of the employee and remain in force and effect as part of the continuing individual hiring contract, consequently, even though the trade union agreement may no longer be effective as between bargaining agent and employer, its terms and conditions nevertheless continue and remain in force and effect as part of the hiring agreement between each employee and employer and continue to govern the relationship between employee and employer until a new trade union agreement is reached or until such time as the employer affirmatively establishes that he no longer intends to be bound thereby. In this latter regard, illustrious counsel for plaintiff relies not only upon the hereinabove cited J. I. Case Co. decision but also Durazo v. Sanburg Manufacturing Co. decided September 1, 1960 by the California Superior Court, Los Angeles County and cited in C.C.H. 41 Labor Cases, P. 23 to 257, Par. 16, 559. The following language appearing in the hereinabove cited J. I. Case Co. decision is pointed to by counsel for plaintiff in support of plaintiff's position.
"After the collective trade agreement is made, the individuals who shall benefit by it are identified by individual hirings. The employer, except as restricted by the collective agreement itself and except that he must engage in no unfair labor practice or discrimination, is free to select those he will employ or discharge. But the terms of the employment already have been traded out. There is little left to individual agreement except the act of hiring. This hiring may be by writing or by word of mouth or may be implied from conduct. In the sense of contracts of hiring, individual contracts between the employer and employee are not forbidden, but indeed are necessitated by the collective bargaining procedure.

*401 "But, however engaged, an employee becomes entitled by virtue of the Labor Relations Act somewhat as a third party beneficiary to all benefits of the collective trade agreement, even if on his own he would yield to less favorable terms. The individual hiring contract is subsidiary to the terms of the trade agreement and may not waive any of its benefits, any more than a shipper can contract away the benefit of filed tariffs, the insurer the benefit of standard provisions, or the utility customer the benefit of legally established rates."
From the foregoing counsel for plaintiff argues that upon expiration of the trade agreement in question the hiring contract between plaintiff and defendant continued not only on a presumptive basis as part of the hiring agreement but also because of defendant's express agreement with the union to continue operation under the expired bargaining agreement until a new bargaining agreement was reached or defendant notified the union that it no longer intended to abide by the terms of the expired contract. Next counsel for plaintiff takes the position that the provision of Article VII(4) (a) (4) of the bargaining agreement which provided that an employee might be terminated for absence from work for three consecutive days without notification to defendant, remained in effect until defendant's promulgation of the hereinabove mentioned Table of Standard Penalties adopted and promulgated by defendant in the latter part of April, 1960. Thereafter, according to counsel for plaintiff, said Table of Standard Penalties became part of the hiring contract between defendant and plaintiff and according to Paragraph or Section M-7 thereof, subsequent absence from work without notice subjected plaintiff only to a warning upon first offense and to a 5 and 10 day suspension upon second and third offenses, respectively. Alternatively, counsel for plaintiff contends that if Article VII (4) (a) (4) of the union contract is applicable instead of the Table of Standard Penalties promulgated by defendant then and in that event, defendant had constructive notice of plaintiff's absence and plaintiff's discharge was in violation of the agreement.
Conversely, able counsel for defendant maintains upon authority of Article 2747 LSA-C.C. and the jurisprudence interpretative thereof, that the law of this state is settled to the effect that a contract of employment or hiring is at will with respect to both employer and employee leaving the employer free to discharge the employee without cause, at any time, and the employee at liberty to leave at his option, unless the contract is one for a specific term by calendar or job or unless the relationship is governed by a collective bargaining agreement. Stated otherwise, the position of defendant-appellant is that ordinarily, in this state, a contract of employment or hiring between employer and employee imposes no obligation upon either with respect to the term or duration thereof in the absence of specific agreement to the contrary. Capable counsel for defendant also argues that upon expiration of a bargaining agreement, in the absence of an express intention to the contrary on the part of the parties thereto, the contract is terminated and becomes null, void and of no effect. Counsel further argues that the bargaining agreement once expired avails the employee nothing whatsoeverthat an expired union contract cannot enlarge or condition the continuing hiring agreement between individual employee and employer and that, upon expiration of the union contract, the only relationship remaining between employer and employee is the hiring or employment agreement which, in the absence of express agreement between employer and employee to the contrary, leaves the employer free to discharge the employee at will without cause and correlatively leaves the employee free to leave at his pleasure. Learned counsel for defendant next argues that in the instant case there *402 was in fact no agreement, understanding or intention on the part of defendant to continue the expired agreement in force until a new contract was consummated but that on the contrary the representatives and officials of defendant company made it quite clear to the union officials that, whereas the old contract had expired and defendant was no longer bound thereby, defendant would continue to use the old agreement only as a "guide" in its relationship with its employees but was free to deviate therefrom at will. In effect, therefore, defendant contends that it was not bound by either the contract or the Standard Table of Penalties promulgated in April, 1960, the latter being merely a "set of company rules" or expressions of company policy which in the absence of a trade agreement between defendant and the union, defendant could change, modify or revise daily if defendant so desired. Finally, defendant claims that under the circumstances obtaining in the instant case, defendant was free to dismiss plaintiff at defendant's option and its election to discharge plaintiff under the provisions of an expired agreement is no grounds for complaint for the reason defendant under the circumstances, was within its rights even had plaintiff been dismissed for no stated reason whatsoever.
For reasons which will hereinafter appear manifest, it is unnecessary to a decision herein to resolve the issue of whether as contended by plaintiff, the expired union-company agreement enlarged, extended and conditioned the hiring agreement between plaintiff and defendant and its terms and provisions remained in effect as part of the company hiring agreement even though the bargaining agent contract had terminated.
There can be no question but that, as argued by learned counsel for defendant, the law of this state is well settled and firmly established to the effect that an employee under a contract of employment for an indefinite period is terminable at the will of either party and such employment may be terminated by the employer at any time without the necessity of assigning cause for the employee's dismissal. In this connection, we note Article 2747 LSA-C.C., which provides as follows:
"Art. 2747. A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause."
In conformity with the foregoing codal provision, the courts of this state have in numerous instances enunciated the principle that in those instances wherein the engagement of an employee is for an indefinite period, the contract is terminable at the option of either employer or employee and the services of such an employee may be discontinued by the employer at any time with or without cause. Phillips v. Mid-Continent Life Insurance Company, La.App., 130 So.2d 791; United Credit Co. v. Croswell Co., 219 La. 993, 54 So.2d 425; Harrosh v. Fife Bros. Health Ass'n, La.App., 1 So.2d 323; Pitcher v. United Oil & Gas Syndicate, 174 La. 66, 139 So. 760.
The record in the instant case reflects that plaintiff, although an employee of many years service in the employ of defendant was, nevertheless, engaged on an indefinite basis at a fixed hourly rate of compensation. The evidence before us does not even remotely suggest that plaintiff was employed under a special contract for a fixed period of time or to perform an agreed unit or amount of work. In other words, it is clearly established that plaintiff was not employed either for a specified interval or "by the job". In view of the foregoing, therefore, it is clear that if the law of this state governing the relationship between employer and employee is applicable to the instant case free of any enlargement or extension thereof resulting from the expired union agreement relied upon by plaintiff herein, it necessarily follows that plaintiff was legally discharged by defendant and plaintiff, therefore, is neither entitled to the wages he seeks herein nor to reinstatement *403 in the employment of defendant without the consent and agreement of the latter.
Since plaintiff in the case at bar pitches his case entirely and exclusively upon rights asserted under the expired trade union agreement, plaintiff may neither legally nor equitably rely thereon without being bound by the contract in its entirety. It is elementary and fundamental law that one may not claim the benefits of an agreement and in the same breath deny, disclaim or disavow his obligations and duties thereunder. In this connection we note Article XII of the trade agreement which reads as follows:
"ARTICLE XIIADJUSTMENT OF DIFFERENCES
"Section 1. A grievance is a difference of opinion between the Company and an employee or group of employees or between the Company and the Union, with respect to the meaning, interpretation or application of the terms of this Agreement. A grievance must be presented to the Company within five (5) working days after the occurrence of the event giving rise to the grievance, or it shall be considered waived. * * *"
In plain and unmistakable language the hereinabove cited provisions of Article XII of the contract imposed upon plaintiff, under penalty of waiver and forfeiture of all plaintiff's rights, the duty to present or cause a grievance to be presented to defendant within five (5) working days following plaintiff's alleged unauthorized discharge.
As contended by counsel for defendant, the law of this state is firmly established to the effect that a party suing upon a contract must allege and prove every fact necessary to bring him within the terms of the contract relied upon. Ardoin v. Fireside Mut. Aid Ass'n, 180 La. 309, 156 So. 363.
Plaintiff herein having declared upon a contract with defendant bears the burden of establishing not only its existence and the term thereof but also every fact essential or necessary to the cause of action asserted under the agreement. Hunter Co. v. Commissioner of Bossier Levee Dist., La.App., 115 So.2d 226.
The contention of learned counsel for plaintiff that plaintiff's failure to present a grievance within five working days of plaintiff's discharge is a matter of special defense and, therefore, unavailable to defendant who did not expressly plead same is without merit. It is settled jurisprudence in this state that nonperformance by plaintiff of an obligation under a contract sued upon is not a "special defense" which must be specially pleaded in answer but is a matter which may be raised by defendant under a general denial. In this regard we note in Williams v. Fisher, La.App., 79 So.2d 127, the following language:
Under Article 327, Code of Practice, and our Pleading and Practice Act, LSA-R.S. 13:3601(2) the defendant must plead special defenses affirmatively in his answer. But referred to are defenses which admit that the obligation exists or did exist, but allege that the obligation is extinguished, for such reasons as payment, remission, compensation, etc., set forth in Article 2130, LSA-Civil Code; or which allege the obligation is voidable, such as for fraud or error, see Articles 1881-2, LSA-Civil Code. All cases cited by plaintiff-appellee concern special defenses of this nature."
The defense of noncompliance tendered by defendant herein does not necessarily admit the existence or efficacy of the contract sued upon. In view of the general denial interposed by defendant, the defense of nonperformance or noncompliance by plaintiff with the terms of the contract merely raises the issue that if plaintiff is suing upon the contract, defendant calls upon plaintiff to prove compliance therewith as required by our procedural rules.
*404 Assuming, however, solely for the sake of argument, that as contended by counsel for plaintiff, evidence of plaintiff's failure to present a grievance within 5 working days of plaintiff's discharge was not admissible under the pleadings because of defendant's failure to plead the issue as a matter of special defense by way of answer or exception of prematurity, the pleadings herein were nevertheless enlarged by the introduction, without objection, of evidence which conclusively showed plaintiff's failure to comply with Article XII of the bargaining agreement.
It appears that following plaintiff's discharge, plaintiff made no demand for reinstatement, took no action to regain his position and filed no protest or grievance, verbal or otherwise, until May 27, 1960, on which date this suit was instituted. Plaintiff's failure to present a grievance within the 5 day period provided for in Article XII of the contract is amply demonstrated by his own testimony admitted without objection. In this connection we quote the following testimony of plaintiff given under cross examination appearing on Pages 45 and 46 of the transcript (Pages 71 and 72 of the record):
"Q When Mr. Amrhein informed you that you were discharged, Mr. Baker, did you ask him why you were discharged?
"A He told me.
"Q So he did inform you the reason that you were discharged, is that correct?
"A He came down and told me I was discharged, that he was supposed to, told me to get my things and go up and take a bath, and he was going to escort me out to the gate.
"Q Mr. Baker, when Mr. Amrhein informed you that you were discharged did he give you a reason why you were being discharged?
"A If he did I don't recall.
"Q Did you ask him why you were being discharged?
"A I didn't ask him.
"Q Did you have any conversation with him about the discharge?
"A No, sir.
"Q Did you ask him if you could talk to the superintendent of the plant?
"A No, sir.
"Q Did you ask to talk to the regional manager? Did you protest your discharge in any way?
"A No, sir.
Again on Page 47 of the transcript of testimony (Page 73 of the record) further cross examination elicited the following testimony from plaintiff without objection:
"Q Mr. Baker, after your discharge did you discuss the matter with any of the union representatives?
"A Yes, sir.
"Q When did you do this, sir?
"A Before I ever took a bath.
"Q After Mr. Amrhein had informed you that you were discharged did you make a request to speak to someone?
"A They came to me.
"Q Who came to you, sir?
"A Stafford and Verbois.
"Q Did you ask them to find out the reason for your discharge?
"A They told me.
"Q Sir?
"A They told me after they come down there.
"Q What did they tell you?
"A They told me I was discharged for not reporting in, that's what they told me.

*405 "Q Was there anything else they told you?
"A They said that they had talked to Mr. Galus up there and said they couldn't do nothing about it at the time.
"Q Did they tell you that in their opinion it was proper that you had disobeyed the rules and should be discharged?
"A They didn't say."
The record further reflects that subsequently in the course of cross examination of plaintiff's witness, Joseph E. Martinez, Secretary-Treasurer of the union during the contract period February 1, 1959 to February 1, 1960, the following transpired:
"Q Had you ever had any discussion with Mr. Galus, or any of the other management personnel other than the foreman, concerning interpretation of a contract or so-called grievances after February 1, 1960?
"MR. WILLIAMS: Just a minute, now, before you answer that. If your Honor please, here we come again with a very technical and involved situation. I am going to object to that question except for the limited purpose of allowing the defendant to show the interpretations of the contract and the workings of this contract after the so-called expiration date of February 1, 1960, but the question and the answer thereto is objectionable if the Court allows it to go beyond the pleadings in this case and if the Court allows it to enlarge upon the defenses offered to this matter or if it is allowed to take the place of an exception of prematurity or otherwise based upon the proposition that Mr. Baker has not exhausted the administrative remedies which might have been available to him prior to the bringing of this suit.
"MR. BREAZEALE: May it please the Court, this witness is called as a hostile witness under cross examination. I'm simply trying to elicit from this witness the actions that were taking place by his committee with management. I am not asking him to give any interpretation of this contract at this point, I'm simply asking for factual material as to what took place. (At this time there was further argument off the record.)
"THE COURT: The testimony is admitted subject to the objection of counsel for plaintiff."
From the foregoing it appears that the contention of counsel for plaintiff that evidence of plaintiff's failure to comply with the contract terms or exhaust plaintiff's remedy under the agreement was not admissible because of defendant's failure to specially raise said issue is clearly without merit. Assuming, as counsel for plaintiff contends, that the admission of such testimony in effect enlarged the pleadings considering defendant did not raise the issue by special defense, the evidence cited, admitted without objection, constituted valid enlargement of the pleadings. The law of this state is settled beyond question that testimony admitted without objection enlarges the pleadings and evidence so admitted may be considered by the court as though the issue thereby raised was properly and timely pleaded. Some of the cases so holding are Beilby v. Monarch, Incorporated, La.App., 125 So.2d 58; Lindsey v. Travelers Indemnity Company, La.App., 111 So.2d 153; Modicut v. Rist, La.App., 98 So.2d 268; Morgan v. Fuller, La.App., 84 So.2d 860; Bartolotta v. Gambino, La.App., 78 So.2d 208; Wright v. Holder, La.App., 72 So.2d 529.
Although learned counsel for plaintiff did ultimately object to the evidence in question the testimony of plaintiff himself given prior thereto is properly in the record. Moreover, plaintiff did not comply with the provisions of Article XII of the contract and, therefore, plaintiff has waived any and all rights which plaintiff may have otherwise enjoyed by virtue of the contract *406 upon which plaintiff relies. The objection by counsel for plaintiff to subsequent evidence of a similar nature came too late. Esthay v. McCain, La.App., 180 So. 235.
From the foregoing it follows that the judgment of the trial court rendered in favor of plaintiff herein was contrary to the law and the evidence and therefore must be reversed and set aside.
For the reasons hereinabove set forth it is ordered, adjudged and decreed that the judgment rendered herein in favor of plaintiff and against defendant is hereby annulled, reversed, rescinded and set aside and judgment rendered herein in favor of defendant, Union Tank Car Company, and against plaintiff, Percy W. Baker, dismissing said plaintiff's demand at plaintiff's cost.
Reversed and rendered.