BREAUX, C. J.
Plaintiff brought this suit for $2,680.24 on a written statement, consisting of a number of items of property.
Plaintiff leased from defendant a building known as “Audubon Theatre,” and while a lessee he placed furniture and other effects in the building. It appears that defendant, in resuming possession of his building, took possession of this property which was in the building, and which plaintiff claimed.
Plaintiff sought to have them returned. Defendant refused to return them on the ground that, under the terms of his lease, they were his, and not plaintiff’s.
While in defendant’s possession, his building known as the “Audubon Theatre” was burnt down and destroyed, and in the building were the articles taken possession of by him, as before mentioned.
Defendant answered plaintiff’s demand by pleading the general denial. The judge of the district court condemned the defendant to pay the sum of $400 for the value of the property. Prom this judgment, plaintiff, Morris, appealed. Defendant, Pratt, also appealed, and each brought up a transcript of appeal. Before this court the appeals were heard as if in one case.
The lease in question was for the period of eight months. It ended on the 1st day of September, 1901, and the rental was $2,606%, paid in advance. This was the only consideration, save that plaintiff bound himself to leave certain improvements on the building without charge; that is, the lessee consented to take the property in the condition in which it was, and not to require any repairs or renovation of any sort to any part of the building or appurtenances.
The lessor and lessee agreed that all improvements made by the lessee, and all “embellishments” and “reconstructions” of the property leased, were to remain in the building, without claim on the part of plaintiff for their value. The defendant assumed the risk of refusing to deliver property which belonged to plaintiff. The property was destroyed. Plaintiff did all he could to get possession, and failed because of the refusal of defendant to deliver them.
The next question which presents itself for determination is whether the property claimed by plaintiff falls within the terms of “embellishments” to, or “reconstructions”' of, the Audubon building, and whether plaintiff is entitled to the value of the property. The word “property,” as used in the contract of lease in question, evidently refers to and includes building and appurtenances leased. Here, however, there is no list or statement of the different items of property the defendant had in the building at the time he leased, and on which he claims “embellishments” were made, and to which he is therefore entitled. It was impossible to furnish such a list of property of defendant’s property, as the articles had been destroyed by fire.
It remains, the defendant gave a broader and more comprehensive meaning to the words just quoted — “embellishments and reconstruction” — than did the plaintiff; hence the first ground of difference. The other issue is insufficiency of testimony, or want of corroboration, and the value of the property, which will be considered later.
The plaintiff made some few permanent repairs on part of the building, and added something by way of improvement to the appurtenances, for which he is not entitled to anything under the stipulations of the lease. We infer that he (plaintiff) must have retouched some of the theatrical implements— at least, dusted them and put them up in proper places.
The articles claimed which did not enter *101 into and form part of the property leased, separate therefrom, not attached to, and connected with defendants’ property, are plaintiff’s, in our view.
For instance, when it became necessary to improve the scenery to keep up the illusion of a landscape, or of any fancy scene of fairies, or to buy other palms, they did not become the property of the lessee. The bower in which Titania and Oberon met and cast furtive glances at each other could have been embellished without necessarily adding anything to lessor’s property.
There is no question of good or bad faith here — only a difference as to the meaning of a phrase or sentence. Such differences arise among the best of men.
Objection is urged by defendant to plaintiff’s claim on the ground that the testimony of one witness who testified was not corroborated as required by article 2277 of the Civil Code.
From defendant’s point of view, the testimony did not sustain plaintiff’s claim.
The defense rests upon the theory that the testimony of one witness must be completely corroborated upon every point, whilst the law requires, as we read it, a general corroboration, not a special and minute corroboration as to every item of an account or list.
Unquestionably, plaintiff left articles of property in the building to which he is entitled. Defendant corroborates this fact by the written permission he granted to let these articles remain in the building. The testimony of the witness Fourton proves that plaintiff did have property in the building. Moreover, plaintiff attempted to secure police protection by sending a man who slept in the building at night, and worked at another place during the day.
This was shown more particularly for the purpose of sustaining plaintiff’s contention that he had done all he could to prevent loss of the articles and to protect them from fire.
True, this attempted protection by sending a man to sleep at the place did not amount to much. It was brought to an end on defendant’s order, who was unwilling to allow the asserted guard to remain, as he was no protection. Defendant, when asked if there was a watchman in the building to look after this property, said that there was a darky sleeping there, if he was the watchman meant by plaintiff, but that he (defendant) did not consider that a sleeping darky was a watchman. As feeble as this corroborating circumstance was, it shows that plaintiff was actuated by some desire to protect the property which he claimed, however much he may have fallen below the mark in the attempt. This testimony has at least a tendency in the direction of corroborative evidence. Alone it would not be sufficient.
We have seen that there are other facts and circumstances, besides this watchman incident, sufficient to enable plaintiff to sustain 'the averment that he had property in the building when it was destroyed.
We have closely examined the list of this property. Not the least difficulty is to determine what items went into, and formed part of, the building and its appurtenances.
There are items claimed it is not possible to determine with certainty to what use they were put. For instance, the following is one of these items: “Lot paint in flies above.”
Whether this was used to “embellish” the building, and had become part of the realty, or was in store for other “embellishment,” we are not informed. For all we know, it may have been coloring used for other purposes. There are mirrors and brushes, perhaps suggestive of other coloring than that forming part of the building or the scenery of the theater.
Similar difficulties present themselves in regard to other articles. In this connection, it is in place to state that the evidence shows *103 that after a short time the carpet of a theater is very much worn, and has but little -value.
We are brought to the question of the value of the property for which we think the defendant should be charged. The price paid for the articles is hardly a fair criterion. They were, to say the least, secondhand property on the market, necessarily very much deteriorated.
The plaintiff, through some one in charge, offered to sell them for $1,000, or about that; and Eourton, who testified as a witness, offered for them a few dollars less than $800.
We infer from the testimony of plaintiff’s agent that he valued them at 50 cents on the dollar — a percentage he did not succeed in obtaining for them. We have taken average between the amount offered for the goods and the amount we infer plaintiff was willing to take, and the result is $900. From which we deduct $400 for an item, the value of which was not proven.
We have weighed all the testimony relating to value, and have come to the conclusion that a balance of $500 is a proper Valuation.
For reasons assigned, the judgment appealed from is amended by increasing the amount allowed to $500, and, with this amendment, the judgment is affirmed at appellee’s costs.