GLADNEY, Judge.
This suit was instituted by William G. Walter for past due wages with penalties for non-payment under LSA-R.S. 23:631, 23:632, which statute provides that an employee shall be paid within twenty-four hours after discharge or resignation of the employee the amount due, and if payment or tender thereof is not made upon demand, the employer will he liable for full wages, together with reasonable attorney’s fees until such payment or tender of payment. Plaintiff’s original petition named George R. Plamblin and Dr. Albert I. Clark as defendants and alleged they were engaged in business as a commercial partnership known as the Al-Ham Corporation. The alleged partnership was not made a party defendant until after a new trial or rehearing was granted. Judgment was not rendered against the partnership defendant nor Hamblin. Dr. Albert I. Clark is the sole defendant in the decree under review which was rendered in favor of plaintiff for $2,-900.00 as back wages and expenses, plus $500.00 attorney’s fees, and the further sum of $100.00 per week as continuing wages from the date of judgment until paid or tendered. Dr. 'Clark has perfected an appeal and his counsel assigns several errors to the rulings of the trial court which concern the existence or non-existence of a partnership between Plamblin and Dr. Clark, which we consider immaterial in the resolution of the appeal.
Because of our views herein we pretermit discussion of the liability of Clark, other than to assume, without deciding, that he would be liable for the debts of the business venture under LSA-R.S. 12:9 which imposes several and solidary liability upon those who as officers or directors transacted business and incurred debts, other than organization expenses, prior to completion of the organization of the corporation. The single issue presented, we think, is whether appellee was employed at a minimum salary of $100.00 per week, rather than wholly on a commission basis and expenses.
A review of the record shows Mr. Ham-blin and Dr. Clark had agreed to form a corporation to be known as “Al-Ham Cor *115 poration”, with the corporate stock equally-divided between them. However, it is undisputed that the formation of such corporation was never actually consummated, although the headquarters of same was established, and that business operations were begun, such as the purchasing of an automobile and other equipment in the corporate name, employment of plaintiff, setting up a skeleton sales organization, soliciting of business, etc. Plaintiff apparently thought he was working for a corporation and the defendant, Dr. Clark, also testified he was of the opinion that the organization of the corporation was complete. In any event, plaintiff admittedly performed his duties pursuant to his contract of employment for a period of approximately six weeks, but during such time he did not consummate sufficient sales to entitle him to any compensation on a commission or percentage basis. There is no dispute that plaintiff is due expenses in the sum of $162.68. In fact, defendant, Dr. Clark, stipulated such an amount was due and testified he attempted to pay same on several occasions.
During the trial on the merits, the most serious factual matter in dispute was the question of whether plaintiff was employed under a contract guaranteeing him a minimum of $100.00 per week, or whether such employment was entirely on a commission basis with no such weekly guarantee. On this question there were three witnesses who testified in the court below, and their testimony was in hopeless conflict.
The trial judge characterized the testimony of the plaintiff, William G. Walter, as “clear and unequivocal, simple and direct”, and that of Hamblin and Clark as “equivocal and nebulous”. It is clear from the record that Clark did not enter into the negotiations that resulted in the employment of Walter, and the latter so testified. Dr. Clark apparently did not fully understand the exact terms of the employment agreement, but testified he understood it was on a commission basis only. In his opinion the judge a quo concluded there was no explanation by Hamblin as to how profits were to be figured, saying:
“ * * * There was no explanation by him about what should be deducted, what the cost of sales were, or who was to figure the cost of sales to determine the profits. There was no accountant, no bookkeeper, and no books kept for this six-weeks period in which the plaintiff worked for the defendant.”
After a study of the record, and particularly the testimony of Walter and Hamblin, we find we are in disagreement with the conclusions reached by the trial judge.
Walter testified that he registered at the employment office and was given a referral to contact George Hamblin at the Pelican Supply Company, and pursuant to this information he interviewed Hamblin during the second week in May, 1961, the testimony being:
"Q. Did Mr. Hamblin employ you?
“A. Yes, he did.
“Q. For whom did he employ you to work?
“A. For the Al-Ham Corporation.
“Q. At what salary or rate of compensation were you hired ?
“A. The compensation was based on an overall two per cent commission on sales.
“Q. Gross sales?
“A. Yes, sir, road sales.
“Q. Gross sales?
“A. On gross sales, yes, sir. And Mr. Hamblin admitted that his business was just getting started, that a man could not make anything on commission for the present, but that it could be very rapidly built up to a good paying job. And, therefore, before we left on our first trip he agreed to pay all of the expenses of the travel *116 ing and One Hundred Dollars per week as a salary until such time as this two per cent commission rose up to the level of what my expenses were, and this Hundred Dollars a week minimum.”
* * * * * *
“Q. What did you actually do as an employee of this business entity?
“A. I called upon dealers to sell the saw chain and the other related items in the Atkins line of saw materials, the chain, the files, the filing guides, the industrial mill saws, and so forth.”

“Q. Well, you have made no allegation that you earned any commission in your petition, have you?
“A. Well, I don’t know. I didn’t write that up. I sold a good bit of chain, and it was my further understanding from Hamblin that the commissions on this thing were to be mine and that I was to be working to build up the field organization, hire other salesmen, and that I was to get two per cent of the total sales for my assigned areas, which was Louisiana and Arkansas.”
With reference to the negotiations leading up to and the actual employment of Walter, Hamblin testified:
“Q. Was Mr. Walter employed to handle insulation or to set up dealerships for Chain Saw?
“A. Both.
“Q. What did he ever do, as far as the sale of insulation was concerned?
“A. He attended several times, when we tried to set up a dealer in Shreveport and elsewhere, one in Bee-bee, Arkansas.
“Q. I understood you to say you tried to set up dealerships.
“A. Dealerships and to make direct sales.
“Q. Now, insofar as the sales of Chain Saw are concerned, what was he employed to do in that capacity?
“A. To set up dealers acting as distributors, salesmen, selling to users.
“Q. What compensation was he to use for setting up dealerships?
“A. Fifty per cent of the profit of the original set-up.
“Q. For example, if he traveled throughout Arkansas setting up dealerships and made no direct sales, was he to be paid anything?
“A. If the dealer was eventually set up, yes.
“Q. If the dealer was eventually set up, what was he to be paid?
“A. That question isn’t too clear, Mr. Dietz.
“Q. My original question was if he traveled throughout the State of Arkansas establishing dealerships and made no direct sales, was he to be paid anything? In answer to that question you said: ‘Yes, if the dealer was ultimately established.’ My question now—
“A. And he re-ordered, yes, he was to receive — I think it worked out fifty per cent. It happened to work out to be two per cent.
“Q. But, if the dealer placed no order, Mr. Walter was to receive no compensation ?
“A. That is correct.
“Q. Did you ever employ any other salesman under that arrangement?
“A. No, sir.”
* * * * *
“Q. How much would you estimate Mr. Walter earned on the straight com *117 mission basis that you say you agreed to pay him?
“A. I believe — I can’t be held to the figure. I believe that they actually figured out that it was Three Hundred Sixty Dollars made over Eleven Hundred and Seventy Dollars spent, making it — ”
í{c % ^
“Q. He was not to be paid a commission on sales at all?
“A. Yes, sir, but the commission was based upon a formula of fifty per cent of the profit. If it cost — if we sold for Two Hundred Dollars, and it was charged to us at a Hundred Fifty Dollars, we were to split the other Fifty.
“Q. What was to determine how much profit was to be made on a sale?
“A. The cost of merchandise to us. And it is delivered to whatever point it was as regards the Chain, if it was a freight charge on it.
“Q. The cost of the merchandise and the cost of transporting the merchandise ?
“A. To the customer.
“Q. No overhead?
“A. No, sir.
“Q. No salaries?
“A. No, sir.
“Q. For other officers; no expense for you?
“A. No, sir, it was adapted along the policies of the distributors who have paid their salesmen this way for a number of years.”
* * * * * *
“Q. When was the plaintiff to be paid under your agreement with him?
“A. When we collected our money; when we got the money, sir.
“Q. How were you then to determine what profit the company made ?
“A. We had a set price list given to us with our exact cost allocated on it.
“Q. Did you maintain books?
“A. There is a statement complete, yes, sir. There is no books as in the form of books, but there is a statement provided us by the distributor.”
We do not find the foregoing testimony uncertain or confusing. The testimony of Hamblin sets forth the methods of calculation by which Walter would be paid fifty per cent commission of the net profits of direct sales made by him, and two per cent on sales made through dealerships he would be able to set up. There is no serious dispute between Walter or Hamblin as to the payment of the commissions, which remunerations seem customary in the employment contracts of certain types of salesmen. The testimony of these witnesses, however, as to the payment of $100.00 per week salary is hopelessly conflicting, although it seems possible there could have been some misunderstanding by Walter as to whether a salary was to be paid or whether advances in cash were to be made to be offset by future earned commissions. Resolution of this question of fact turns upon whether we shall accept the version of Hamblin or that of Walter. We find the testimony of Hamblin should not be rejected upon the grounds advanced by the trial judge. We can find no reason why Ham-blin’s testimony should not be entitled to as much credibility as that of Walter. Especially should this seem to be true as it is corroborated by the testimony of Dr. Clark, who stated that it was his understanding Walter was to be recompensed solely on a commission basis. Our holding, therefore, is that plaintiff has failed to prove his employment for wages by a preponderance of the evidence.
In regard to plaintiff’s claim to statutory penalties we observe that the statu *118 tory provisions above cited, (LSA-R.S. 23 :- 631, 23:632), have uniformly been held, in a long line of decisions, to be coercive or penal in nature, therefore are strictly construed and yield in interpretation and application to equitable defenses. Chester et al. v. Davis, La.App., 66 So.2d 377 (2d Cir. 1953); Strickland v. American Pitch Pine Export Company, Inc., 224 La. 949, 71 So.2d 338 (1954); Tuberville v. Foster, La.App., 113 So.2d 805 (1st Cir. 1959).
Before any consideration of penalties may be made, however, plaintiff first has the burden of proving by a preponderance of the evidence, the alleged verbal contract of employment and the terms thereof upon which his suit is founded. Garsaud v. Forrest, 165 La. 750, 116 So. 173 (1928); Hammond v. Taylor, La.App., 80 So.2d 888 (1st Cir. 1955). This he has failed to do.
During the course of the trial it was stipulated by counsel for the defendant that plaintiff was due the sum of $162.68 for reimbursement of expenses, and there will be judgment for such amount payable to plaintiff.
For the reasons hereinabove set forth, the judgment from which appealed is reversed and recast to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of William G. Walter and against the defendant, Dr. Albert I. Clark, in the sum of One Hundred Sixty-Two and 68/100 ($162.68) Dollars, with interest thereon from judicial demand until paid. It is further ordered that all costs of this suit be assessed equally between appellee and appellant.