**John Stephen LANIER, Jr., Plaintiff-Appellee,**

v.

**ALENCO, a Division of Redman Industries, Inc., Defendant-Appellant.**

No. 71-2510

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

April 25, 1972.

Rehearing Denied May 22, 1972.

New York, 5 Cir. 1970, 431 F.2d 409, Part I.

John W. Haygood, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendant-appellant.

Harry Connick, Anita Connick, Connick & Connick, New Orleans, La., for plaintiff-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

GOLDBERG, Circuit Judge:

Alenco Company, a Louisiana corporation manufacturing aluminum windows, glass doors, and cabinets, appeals from a district court decision that John S. Lanier, the plaintiff below, was hired as a branch sales manager by Alenco's branch manager for a fixed term of one year at certain salary and commission levels. Lanier has also appealed the trial judge's denial of attorney's fees. We affirm the district judge on both points.

While employed as a "contact sales representative and marketing specialist" by the General Electric Company, Lanier was approached by James Shelton, then

Alenco's branch manager in New Orleans. Shelton proposed that Lanier leave his $15,000 per year position at General Electric and accept a position as sales manager at Alenco. The district judge found that Shelton represented that Lanier would receive a one-year contract at a base salary of $10,800, plus a 2% commission on the net profit on cabinet sales of Alenco's New Orleans branch office and a 2½% commission on Lanier's own sales for Alenco.[1] Shelton also represented to Lanier that, as sales manager of the cabinet-making concern in New Orleans, he would earn between $20,000 and $22,000 for the year. The district court further found that Shelton, in order to assure Lanier that he would receive the total earnings, promised Lanier that he would be assigned certain company accounts of $750 per month, known as "start up" commissions.[2] As a result of Shelton's representations, the district court concluded that Lanier had been promised a yearly income of $19,800, payable from July of 1969 to July of 1970. On the basis of Shelton's representations, Lanier left the employment of General Electric and began working for Alenco. He testified that he spent part of his time at Alenco doing those functions generally associated with the position of sales manager, but that he spent a great deal of his time answering complaints about Alenco cabinets. Alenco does not complain that Lanier was a disloyal or ineffective employee. In December, 1969, Alenco presented a "new offer of reimbursement" to Lanier. The new "offer" provided for a significant reduction in both salary and commissions. Lanier refused and was discharged in January of 1970, admittedly without basis or justification. After his termination Lanier sought reemployment without substantial success. In March of 1970 he finally found another position at which he was still employed at the time of the trial. As of July 13, 1970, the date on which his alleged one-year contract with Alenco was to have terminated, Lanier had earned $2,800 from his new position. Alenco paid Lanier only $8,788 on his contract. On the basis of diversity jurisdiction, Lanier instituted suit against Alenco for the remainder of his yearly salary and commissions under the alleged contract, for special damages, and for attorney's fees. In a non-jury trial, Lanier recovered a judgment of $8,222 [3] which did not include attorney's fees or damages. Alenco appealed, alleging (1) that Lanier did not comply with Louisiana law regarding the proving of oral contracts for amounts greater than $500, and (2) that Lanier did not establish that Alenco's branch manager, Shelton, had the authority, express or apparent, to hire Lanier for a fixed term. Finding both allegations without merit, we affirm.

Under Louisiana law, which is applicable in this diversity case, the employer must show good cause for discharging a factory employee engaged for a fixed term, *compare* L.S.A. § 2748 *with* L.S.A. § 2747 *and* Baker v. Union Tank Car Co., 1962, La.App., 140 So.2d 397, and an employee for a fixed term who is unjustifiably discharged has a right of action against the employer on the contract, L.S.A. § 2749. However, an oral contract of a value greater than $500 must "be proved at least by one credible witness, and other corroborating circumstances," L.S.A. § 2277. It is

1. Lanier's "personnel action form," an inter-office document of Alenco, lists his "rate of pay" in the yearly sum of $10,800, and there is a notation on that same form that he was to receive the stated commissions or net profits.

2. Basically, a "start up" commission is a company account used to supplement a new salesman until he can establish contacts and sales on his own.

3. The judgment was computed by taking the trial judge's finding that Lanier was promised a yearly salary of $19,800, deducting the amount paid by Alenco ($8,688) and the amount earned in mitigation after March of 1970 ($2,800), and then adding interest to the date of judgment.

established law that Lanier himself can be the "one credible witness" required, King v. Jarvis, 1962, La., 144 So.2d 616; Ory v. Griffin, 1964, La., 162 So.2d 97. It is also established Louisiana law that the "corroborating circumstances" need only be general, not specifically directed to each element of Lanier's case. Pino v. Bennett, 1961, La., 126 So.2d 460; Morris v. Pratt, 1905, 114 La. 98, 38 So. 70. Finally, the findings of fact of a trial judge cannot be disturbed on appeal unless "clearly erroneous," F.R.Civ. P. 52(a). *See* Sibbach v. Wilson, 1940, 312 U.S. 1, 61 S.Ct. 422, 85 L.Ed. 479; Ragan v. Merchants Transfer & Warehouse Co., 1949, 337 U.S. 530, 69 S.Ct. 1233, 93 L.Ed. 1520.[4] Lanier testified to his dealings with Shelton, and Alenco at no point directly contradicted that testimony.[5] Alenco produced only a company vice-president at the trial, who testified to a general "company policy" against hiring for fixed terms. The trial judge is required to make judgments regarding the relative weight and credibility of varying testimony, and we cannot say from the record that the trial judge's judgments here were "clearly erroneous." The company's inter-office "personnel action form" did not state specifically that Lanier was hired for a fixed term, although his "rate of pay" was set out as a yearly sum, but neither did it state specifically that he was hired only at will. The trial judge was clearly entitled to give minimal credence to Alenco's assertion that its own inter-

office form, which stated nothing one way or the other, foreclosed the issue of fixed-term employment. There is no proof in the record that the "personnel action form" was intended to be a written rendering of any oral contract between Lanier and Shelton, nor does it appear from the record that Lanier even *saw* that form. It is very clear that he did not sign it.

■ Lanier, with a wife and four children, left a secure and well-paying position with General Electric, a position that he had held for eleven years, to join Alenco as a branch sales manager. Like the trial judge, we find it unlikely that Lanier would leave that sort of employment without some substantial representation of a secure position at Alenco. Employment at will does not have much security, particularly when there is testimony in the record from former Alenco employees that Alenco had a history of discharges without cause. Furthermore, it does not appear that Lanier was precipitous in his shift of employment to Alenco, for his negotiations with Shelton took longer than one year. Lanier immediately assumed functions at Alenco's New Orleans branch commensurate with his explanation of the contract with Shelton, taking into consideration the newness of the branch operation. There is nothing in the record to indicate that Lanier was an unsatisfactory employee. We conclude that these factors are not, as a matter of law, insufficient "corroborating circum-

4. The Louisiana rule requires that the trial judge's fact findings be upheld on appeal unless "manifestly erroneous." *See, e. g.,* Gilbert v. Heintz, 1956, 231 La. 535, 91 So.2d 784. Although the scope of the Louisiana standard is not entirely certain, it appears that the federal and state standards for appellate review of facts are substantially similar. *See* Melancon v. McKeithen, E.D.La. (three-judge court), Civil No. 3390 (March 1, 1972); Tate, Manifest Error-Further Observations on Appellate Review of Facts in Louisiana Civil Cases, 22 La.L.Rev. 605 (1962); Hardy, The Manifest Error Rule, 21 La. L.Rev. 749 (1961); Comment, 21 La.L. Rev. 402 (1961).

5. For reasons not at all clear from the record, neither Alenco nor Lanier called Shelton to the stand at the trial, although it appears that he was waiting outside the courtroom and available to both sides. Alenco asserts that the trial judge drew an inference adverse to Alenco because of the company's failure to call Shelton in its defense, but we discern no such inference in the trial judge's findings of fact or conclusions of law. This court makes no assumption whatsoever regarding the "responsibility" of either side to produce Shelton.

stances" to overturn the trial court's judgment that Lanier and Shelton agreed upon an oral contract of employment for a fixed term of one year at certain salary and commission levels, including "start up" commissions. Lanier's failure to acquiesce to Alenco's "new offer of reimbursement" at reduced salary and commission levels does not constitute "good cause" for discharge under Louisiana law, for such a substantive change in the terms of a contract requires the consent of both parties. L.S.A. § 1901.

Alenco also alleges that Shelton did not have express authority to hire for a fixed term. We do not reach that issue, however, for "apparent authority" is sufficient under Louisiana law to bind the principal to a contract of employment for a fixed term, L.S.A. § 2997; L.S.A. § 3000; General Finance Co. v. Veith, 1937, La., 177 So. 71; James v. Judice, 1962, La., 140 So.2d 169; Ebert v. Babin, 1967, La., 200 So. 2d 672.[6] We conclude that the trial judge was correct in finding that Shelton, as branch manager of the Alenco office in which Lanier was to serve, had apparent authority to hire a branch sales manager for a fixed term. Lanier testified that Shelton had affirmatively represented to him that Shelton, as branch manager, could and did hire him for a fixed term. There being no specific contradictory testimony, the question sifted down to credibility, and the trial judge credited Lanier. Shelton's actions were clearly of benefit to Alenco in luring away an experienced sales manager for its fledgling cabinet venture. See L.S.A. §§ 2995, 3011. Of course the existence of what is loosely termed "apparent authority" turns generally on what the principal does, not on what the agent does. See, e.g., Herbert v. Langhoff, 1936, 185 La. 105, 168 So. 508. However, it is not at all unreasonable that a prospective employee would not question the hiring authority of the branch manager of the plant in which he was to work, absent something in the negotiations or in the express and announced policies of the company that would reasonably lead him to suspect otherwise. Alenco asserts that hiring for a fixed term is against company policy, but we can find nothing in the printed expressions of "company policy that would so indicate. The "policy and procedures manual" of Alenco, the company's basic working document, has nothing whatsoever that would forbid hiring for a fixed term. Likewise, there is nothing in the "standard instructions" of the company that would forbid a term employment. And there is nothing stated on the "personnel action form" that would give rise to any suspicion by a prospective employee, even assuming that he were to see that form at some point, that the company did not as a matter of policy hire for a fixed term. Alenco produced at trial the agenda of a managers' meeting, attended by Shelton but certainly not by all prospective employees of Alenco, stating that all hirings by branch managers would be cleared with the general manager. But it is uncontroverted that the general manager did approve the hiring of Lanier; Alenco's general manager, branch manager, vice-president, and president initialed Lanier's "personnel action form," see note 1, supra. Alenco is really asserting that it did not approve the hiring of Lanier under the terms on which Lanier says he was hired. But that assertion merely takes us back to the trial judge's correct conclusion under section 2277 that there was an oral contract between Shelton and Lanier along substantially the terms that Lanier alleged.

After working out the terms of his contract with Shelton, Lanier met the vice-president who later initialed his

---

6. L.S.A. § 2997, which enumerates those acts that *require* express authority, omits reference to employment contracts. In addition, the stipulation of a definite term in a contract is generally left to the agreement of the parties, L.S.A. § 1764.

"personnel action form" and testified to company policy at the trial. The company asserts that Lanier was under obligation to question the vice-president with regard to the fixed-term nature of his employment, and that his failure to do so constituted a breach of Lanier's duty to ascertain the extent of Shelton's authority. *See* Builder's Center, Inc. v. Smith, 1969, La.App., 228 So.2d 245. With no indication from Shelton, from the company, or from the vice-president that he should be on notice regarding the scope of Shelton's authority to hire a sales manager for the branch office he headed, we find nothing negligent, nor even unusual, in the fact that Lanier did not set about grilling the company vice-president regarding the terms of a contract that he had just completed with the company's branch manager. Even if Lanier had seen the company's "personnel action form," the figures on that form comported substantially with the terms that he had discussed with Shelton, and there was nothing to put him on notice of any "policy" of the company that might controvert those terms.

█ Lanier offers the final fillip to this disagreement. He claims that attorney's fees are mandatory under L.S.A. § 23:632, which, Lanier claims, he is within.[7] However, it appears that Louisiana courts have read that statute in quite a different way, compelling attorney's fees only in limited circumstances. There is no conclusion from the trial court that Alenco acted in bad faith in refusing to tender the money allegedly owing to Lanier for the remainder of his one-year contract, and we do not find Alenco in bad faith in appealing the case to this court. It is certainly possible that Alenco contested the matter below, believing that it had a sub-

stantial defense and appealed on the same basis. Under these circumstances it would seem that Louisiana law would deem attorney's fees inequitable and Section 23:632 inapplicable. *See* Mitchell v. First National Life Ins. Co. of La., 1959, 236 La. 969, 109 So.2d 61; Foreman v. Pelican Stores, 1945, La.App., 21 So.2d 64; Bridges v. McClenaghan, 1943, La.App., 14 So.2d 652; Walter v. Clark, 1962, La.App., 143 So.2d 113; Tuberville v. Foster, 1959, La.App., 113 So.2d 805.

The district judge did a thorough job of weighing the evidence and applying Louisiana law. Finding him neither clearly erroneous in his fact-finding nor mistaken in his legal analysis, the judgment is affirmed in all respects.

Affirmed.

---

7. L.S.A. § 23:632:
   "Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the laborer or other employee for his full wages from the time the demand for payment by the discharged or resigned laborer or employee was made, until the employer shall pay or tender payment of the amount due to such laborer or other employee. Reasonable attorneys' fees shall be allowed the laborer or employee by the court which shall be taxed as costs to be paid by the employer, in the event a just suit be filed by the laborer or employee after twenty-four hours shall have elapsed from time of making the first demand following discharge or resignation."