GUIDRY, Judge.
Robert J. Naquin and Associates, Inc. (hereafter Naquin) brought this suit to collect a real estate commission allegedly owed by Portage Plantation, Inc. (hereafter Portage). Previously, this court considered an appeal in this case from a judgment of the *699 trial court granting defendant’s motion for summary judgment and dismissing plaintiffs suit with prejudice. Robert J. Naquin, Etc. v. Portage Plantation, 372 So.2d 821 (La.App. 3rd Cir. 1979). We reversed and remanded finding there existed a genuine issue of material fact as to whether Naquin was orally authorized to continue acting as agent for Portage beyond the expiration date on an exclusive listing agreement. After remand and a trial on the merits the court found the evidence to be in favor of defendant and dismissed plaintiff’s claim with prejudice. Plaintiff appeals. We affirm.
The only issue is whether the trial court erred in finding there was no oral extension of the term of the original listing agreement.
The record reflects that on February 11, 1977, Portage, represented by its president, Robert K. Guillory, entered into an exclusive listing agreement with Naquin, represented by its president, Robert J. Naquin. The agreement provided for the sale, exchange, or option of a tract of land composed of two (2) sections designated as Section 5, T 5 S R 6 E and Section 32, T 6 S R6 E, totaling 1,297 acres located in St. Landry Parish, Louisiana. The parties agreed that the property would be sold for $800.00 per acre. According to the agreement Naquin, as real estate broker, would be entitled to collect a commission $25,000.00 or two and one-half (2V¿) per cent on the gross amount of the transaction, whichever is less. In addition, the agreement provided that such commission became payable: (1) upon any agreement for or any transfer of title during the term or extension thereof; (2) upon Portage withdrawing the property without Naquin’s consent or upon Portage voluntarily making the property unmarketable during the term or extension thereof; or (3) upon Portage, within ninety (90) days after the expiration of the term or extension thereof, entering into a purchase agreement with anyone whom Naquin had negotiated with prior to the listing agreement’s expiration. The agreement also provided that no offer could be submitted to Portage without first being signed by the offeror or his authorized agent. The listing agreement by its terms expired on March 12, 1977.
On March 16, 1977, Portage entered into a Buy and Sell Agreement wherein Portage agreed to convey 640 acres (Section Five) for $496,000.00 to Warren L. Hensgens and Dennis J. Hensgens. Subsequent thereto, Portage paid Naquin a commission of $12,-500.00, however there is disagreement between the parties regarding under which provision of the agreement the commission was paid. Defendant alleges that the commission was paid to Naquin in accordance with Paragraph 5(a) of the listing agreement which provides:

“5. Compensation to Agent: I hereby agree to pay Agent a fee of $25.000 or two and one half (2Vz) per cent on the gross amount of any transaction, whichever is less, upon any agreement for or transfer of title, during the term hereof or any extension thereof by agent, or through any other person, or by me, or if said property is withdrawn from exchange, sale, lease or option without the consent of Agent, or made unmarketable by my voluntary act during the term hereof or any extension thereof.

(a) If within 90 days after expiration hereof, or any extension thereof, principal enters into an agreement with anyone with whom Agent has had negotiations prior to final expiration, provided I have received notice in writing thereof before or upon expiration of this agreement or any extension thereof.”

On the other hand, plaintiff contends that the commission was paid because the original listing agreement was still in force and effect due to an oral extension of said agreement granted on March 12, 1977. Testimony received at trial indicates that Mr. Naquin telephoned Mr. Guillory on or about March 12, 1977, however the substance of their conversation is the subject of much dispute. According to the defendant, the plaintiff requested an extension of the listing agreement since the agreement was to expire by its terms on March 12, 1977, but Guillory refused to grant such an *700 extension. Defendant testified further that he suggested Naquin submit to him a list of names of those persons whom Naquin had contacted regarding the property during the term of the agreement, thereby protecting his interest in a potential commission as provided in Paragraph 5(a) of the agreement. Subsequently, Mr. Naquin notified Mr. Guillory via “speed letter” dated March 13, 1977 that he was registering particular clients with whom he had negotiated prior to the expiration date of the listing agreement as per paragraph 5(a) of that agreement. Those clients listed therein were Warren and Dennis Hensgens, John Jef-coat, Warren Bruner, and James M. Cunningham. In contrast to Mr. Guillory’s testimony is that of the plaintiff, Mr. Naquin who stated that the defendant granted a verbal extension of the original listing agreement and that subsequent to March 12, 1977, the plaintiff continued to negotiate the sale of the remaining tract of land designated as Section 32. On March 29, 1977, as a result of these continuing negotiations Mr. James M. Cunningham signed an Agreement to Purchase the remainder of the land referred to in the listing agreement for a purchase price of $524,800.00. When presented with this agreement, the defendant on behalf of Portage, refused to sign and withdrew the property from the market. Defendant’s actions at that time form the basis of the instant suit.
Generally, agreements affecting immovable property must be in writing, however, one exception is listing agreements such as the one which is the subject of the instant suit. In the case of Samuels v. Firestone Tire & Rubber Co., 342 So.2d 661 (La.1977), the court held:

“It is well-settled that an agreement listing immovable property for sale with a real estate broker need not be in writing. A contract between seller and agent mav be made orally or a written contract may be chanered orally.” (Emphasis supplied)

Whether or not Naquin has proved the existence of an oral extension of the listing agreement is governed by Louisiana Civil Code Article 2277, which provides:

“All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed five hundred dollars, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above five hundred dollars in value, must be proved at least by one credible witness, and other corroborating circumstances.”

Our courts have concluded that the credible witness referred to in Article 2277 may be the plaintiff and that “other corroborating circumstances,” means general corroboration which does not require independent proof of every detail of the witness’s testimony. Morris v. Pratt, 114 La. 98, 38 So. 70 (1905); King v. Jarvis, La.App., 144 So.2d 616 (1962); Samuels, supra. As previously noted, both plaintiff and defendant agree to having a telephone conversation on or about March 12, 1977, however, disagree significantly as to the contents of that conversation. There were no witnesses to the telephone conversation of March 12. Mr. Na-quin testified that he telephoned Guillory to get an oral extension of the listing agreement because he had a purchaser and that the defendant agreed to such an extension. The defendant denies granting an extension of their agreement. To corroborate his testimony, the plaintiff introduced into evidence the “speed letter” to Guillory which listed potential purchasers, the Agreement to Purchase and Sell dated March 16, 1977 pertaining to Section Five, the Agreement to Purchase and Sell dated March 28, 1977 pertaining to Section 32, various telephone bills purporting to show telephone calls made by the plaintiff to the defendant, and letters exchanged by the plaintiff and Mr. James Cunningham concerning the return of a $10,000.00 deposit made by Cunningham in conjunction with the proposed sale of Section 32 as described in the March 28, 1977 agreement.
Written reasons for judgment were not assigned by the trial court, however, it is apparent that the trial court was persuaded neither by the plaintiff’s testimony nor the documents introduced by him to *701 corroborate his testimony. In Cormier v. Douet, 219 La. 915, 54 So.2d 177 (La.1951) the Louisiana Supreme Court stated:

“Since the requirement of Article 2277 R.C.C. is such that it of necessity draws into its legal vortex the sufficiency of proof shown by the record, and since the evidence is correlated with the credibility of the witnesses, the district judge’s conclusions must be accepted, unless they are manifestly erroneous. Barnes v. LeBlanc, 207 La. 989, 22 So.2d 404; Thornton v. Ellinerton, 209 La. 613, 25 So.2d 282; Meridian Land and Mineral Corp. v. Bagents, 211 La. 627, 628, 30 So.2d 563; and Martin v. Martin, 212 La. 1092, 34 So.2d 329.”

Testimony by the opposing parties was in direct conflict regarding the crucial issue of whether or not the defendant granted an oral extension of the listing agreement. The Louisiana Supreme Court in Canter v. Koehring, 283 So.2d 716 (La.1973) commenting on the effect of contradictory testimony and the role of the appellate court in reviewing the factual determination of the trial court stated:

“When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.”

See also Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
After a careful review of the record, this court concludes that the lower court was not clearly wrong in its factual conclusions.
For the above and foregoing reasons, the decision of the trial court is affirmed at appellant’s cost.
AFFIRMED.