John C. HIGGINS, Plaintiff-Appellee Cross-Appellant,

v.

SMITH INTERNATIONAL, INC., Defendant-Appellant Cross-Appellee.

No. 82–3232.

United States Court of Appeals, Fifth Circuit.

Sept. 21, 1983.

Reid K. Hebert, Lake Charles, La., for defendant-appellant cross-appellee.

Newman & Fazzio, Raleigh Newman, Donald McKnight, Lake Charles, La., for plaintiff-appellee cross-appellant.

Before REAVLEY and JOHNSON, Circuit Judges, WYZANSKI,[*] District Judge.

JOHNSON, Circuit Judge:

A jury found that Smith International, Inc. entered an oral contract with John C. Higgins to employ him for two years at $42,000 per year, and then breached it by dismissing him six months into the contract without adequate justification. The district court initially entered judgment on the verdict; some time later, it granted Smith International's motion for a remittitur and entered a superseding judgment reducing Higgins' damage award. Smith International and Higgins appeal. We dismiss Higgins' cross-appeal and affirm the judgment of the district court.

## I.

Higgins went to work for Smith International in August 1975 as a fishing tool expert with its Brazilian offshore oil drilling operations. In late November, while working on one of the rigs, he slipped and fell down a long flight of stairs. The initial bruising and soreness in his lower back intensified over the ensuing months; in February, he sought treatment in a Brazilian emergency clinic. The doctors diagnosed his problem as a compression fracture of two vertebrae in his lower spine. Smith International offered to return him to Louisiana for treatment. Higgins accepted and flew back to New Orleans in mid-February. He was met on arrival by the Smith International operations manager, who rented a

[*] District Judge of the District of Massachusetts, sitting by designation.

car for Higgins' use while in the states and accompanied him on a diagnostic visit to the Oschner Foundation Hospital.

About ten days later, Higgins met with Champ Emerson, the executive vice-president of Smith International. Emerson explained to him that the $3500 per month salary he had been earning in Brazil actually consisted of $1000 per month base pay and a $2500 per month cost of living allowance. Emerson then informed him that, as the cost of living allowance was not available to Smith International employees living in the United States, he would receive only the $1000 per month base pay until he returned to Brazil. Emerson directed him to appear at the clinic the following day for further medical examinations.

Higgins did not keep the appointment. Instead, after thinking the matter over for a few days, he decided that because he owed alimony of $600 per month and because recommended surgery and recovery would probably take four months, he had no choice but to return to Brazil. In early March, Higgins left the rental car in a New Orleans motel parking lot and flew back to Brazil. Not until he arrived there did he learn that he had been terminated several days earlier for missing the medical appointment scheduled by Emerson, failing to drop off the rental car on time, and not reporting to work for three consecutive days. Higgins returned to the United States and filed this action.

Higgins began this lawsuit with claims under the Jones Act and in admiralty for personal injury compensation. Later, he added a breach of contract claim: he charged that he and Emerson had verbally agreed on the day he was hired that he would work for Smith International for two years at $42,000 per year, and that Smith International breached that contract by firing him six months into the term without adequate justification. The matter was tried to a jury. Higgins prevailed on all counts. The jury awarded him $122,500 for his personal injuries and $61,298.73 as salary owing for the eighteen months remaining on the employment contract. The district court entered a judgment on the verdict. Smith International settled with him on the personal injury claims but moved for judgment notwithstanding the verdict, a remittitur or a new trial on the contract claim. The district court denied its motions for judgment n.o.v. and a new trial, but granted a remittitur reducing the contract damages to $18,000—the amount of the base salary payable over the portion of the two-year period remaining when Higgins was fired.

Smith International appeals, claiming that Higgins did not satisfy Louisiana requisites for proof of an oral contract, that the jury erred in concluding that it did not have cause to discharge Higgins, and that the district court misstated the law in its instructions to the jury. Higgins filed a notice of cross-appeal from the district court's order of remittitur.

## II.

The manner in which the district court handled the matter of remittitur raises a threshold question of our jurisdiction, and an ancillary problem in definition of the issues properly before us. The jurisdictional problem is one of finality. Intermeshed with it is the propriety of Higgins' cross-appeal.

The district court's order of remittitur stated:

The law of this Circuit requires that in the event the trial judge concludes that a jury verdict for damages so far departs from the evidence as to warrant his granting a new trial, with respect to the amount of damages, it should simply grant a new trial on the damage issue or it should give the winning party an option of having a new trial or agreeing to a remittitur of part of the amount found in the jury verdict. Under the unusual facts of this case the appropriate action for this Court to take is to reduce the judgment on the contract claim to $18,000 and to sign a judgment for that amount. This we will do. A judgment to that effect is attached.[2]

2 Plaintiff may, of course, ask for a new trial in lieu of the remittitur, and of course, all parties are free to appeal this judgment through the appellate courts.

The order was accompanied by an entry of judgment in the amount of $18,000. Higgins did not move for a new trial within the ten days allowed under the rules, Fed.R. Civ.P. 59(b). The only actions following in the district court were Smith International's notice of appeal, and Higgins' subsequent notice of cross-appeal.

■ The district court correctly stated the principle governing remittitur: the plaintiff must be offered a choice between acceptance of a reduction in damages or a new trial. *Keyes v. Lagua*, 635 F.2d 330 (5th Cir.1981); *Stewart v. Atlantic Pipe Line Co.*, 479 F.2d 311 (5th Cir.1973); *Gorsalitz v. Olin-Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir.1970), *modified*, 456 F.2d 180 (5th Cir.1972), *cert. denied*, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972). Implicit in that rule are its corollaries: imposition of a remittitur by the district court requires a reversal and remand for the plaintiff's exercise of his right to choose. *Stewart*, 479 F.2d at 312. If the choice is properly put to the plaintiff, the matter, under the direction and control of the district court, remains open in the district court until he elects one of his options. The decision offering remittitur or a new trial is incomplete, interlocutory, and not appealable. *Eaton v. National Steel Products Co.*, 624 F.2d 863 (9th Cir.1980); *Evans v. Calmar S.S. Co.*, 534 F.2d 519 (2d Cir.1976); *DePinto v. Providence Security Life Insurance Co.*, 323 F.2d 826 (9th Cir.1963), *cert. denied*, 376 U.S. 950, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964).

Three questions arise from the course of events in the district court: Did the district court's order conform to the requirement that the plaintiff be allowed to choose between a new trial and a remittitur? If so, did Higgins accept the remittitur by failing timely to move for a new trial? And if so, did Higgins' subsequent acceptance of the remittitur confer finality on the judgment entering the remittitur? The first and last questions are answered by *Howell v.*

*Marmpegaso Compania Naviera, S.A.*, 566 F.2d 992 (5th Cir.1978). That decision was the second appellate ruling in the course of that case. In the first appeal, this Court decided that damages awarded to plaintiff Howell were excessive, and remanded with instructions to the district court to offer Howell the choice between a remittitur or a new trial. Instead of giving Howell the choice, the district court simply entered a reduced judgment. Howell subsequently filed an acceptance of the remittitur. On appeal, this Court held that, notwithstanding the apparent finality of the judgment entering the remittitur, Howell had the right to reject the remittitur and insist on a new trial. We decided that the judgment remained " 'open, unfinished [and] inconclusive,' *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)" until Howell accepted it. Upon his acceptance of the remittitur, we held, the judgment became final and appealable. *Id.; accord, Demeretz v. Daniels Motor Freight, Inc.*, 307 F.2d 469, 471 (3d Cir. 1962).

■ The circumstances of that case closely parallel the situation now before us. In acting on Smith International's motion, the district court clearly and correctly stated governing law and advised Higgins that he could exercise his right of choice by requesting new trial in lieu of the remittitur. If Higgins' failure to request a new trial qualifies as an acceptance of the remittitur, the reduced judgment became final and appealable on the day his right to seek a new trial lapsed. The critical issue, then, is whether Higgins' failure to request a new trial can be considered an acceptance of the remittitur. We believe that under the circumstances of this case, it can.

It is clear that the district court and the parties understood the intent of the order of remittitur to be the final, dispositive action in the district court, unless the plaintiff took affirmative steps to claim his right to a new trial. The district court's order acknowledged the controlling principles, and advised the plaintiff of his right to set aside its order by electing a new trial. Hig-

gins stated, in his supplemental brief addressing this point and at oral argument, that he deliberately elected the remittitur over a new trial, and for that reason filed no motion for a new trial. No prejudice occurred to Smith International: its appeal was neither premature nor delayed by confusion over the status of the judgment, but was timely filed. *Cf. Bankers Trust Co. v. Mallis,* 435 U.S. 381, 98 S.Ct. 1117, 1121, 55 L.Ed.2d 357 (1978) (holding that the separate-judgment requirement of Fed.R.Civ.P. 58 can be waived by the parties); *Markham v. Holt,* 369 F.2d 940, 942 (5th Cir.1966) ("where ... the overriding intent was effectively to appeal, and no prejudice will result to the appellee, we are justified in treating the appeal as from a final judgment").

■ Practical, not technical, considerations are to govern the application of principles of finality. *Gillespie v. United States,* 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964); *Jetco Electronics Industries, Inc. v. Gardiner,* 473 F.2d 1228, 1231 (5th Cir.1973). Nothing would be gained by dismissing the appeal. The matters once before the district court are in fact, if not in perfect form, completed. If the appeal was dismissed, the district court would simply receive and enter Higgins' acceptance of the remittitur. The appellate process would then have to begin anew; "[w]heels would spin for no practical purpose," *Bankers Trust Co.,* 98 S.Ct. at 1120. The rules of procedure are to be construed "to secure the just, speedy and inexpensive determination of every action," Fed.R.Civ.P. 1. They do not demand obeisance to empty formalities. Under these circumstances of an order written, understood and applied to require the filing of a motion for a new trial to reject an order of remittitur, we deem the failure to file that motion as an acceptance of the remittitur.

In so holding, we do not approve the procedure used by the district court as a generally acceptable alternative to the standard practice of withholding judgment until the plaintiff has entered on the record his choice between a remittitur or a new trial. At best, the method engenders confusion over the finality of actions taken in the district court. If uniformly applied, it would create the proverbial trap for the unwary: by allowing finality to accrue simply on the plaintiff's inaction, the procedure could lure the unwitting into inadvertent forfeiture of the right to choose a new trial. Such a result would be unacceptable. We have refrained in this case from a strict construction of the requisites of finality solely because the record clearly shows that the plaintiff intended to convey his acceptance of the remittitur by taking no further action. The better practice remains the usual one of entry of judgment only upon the plaintiff's unambiguous exercise of his right of choice.

Higgins' acceptance of the remittitur precludes his cross-appeal from it. *Donovan v. Penn Shipping Co., Inc.,* 429 U.S. 648, 97 S.Ct. 835, 836, 51 L.Ed.2d 112 (1977) laid to rest any notion that "a plaintiff can[ ] appeal the propriety of a remittitur order to which he has agreed." It does not matter, as Higgins suggests it does, that appeal from the district court's judgment had already been taken by Smith International when he filed his cross-appeal. *Donovan's* bar extends equally to cross-appeals. *Keene v. International Union of Operating Engineers,* 569 F.2d 1375, 1381 (5th Cir. 1978); *Westerman v. Sears, Roebuck & Co.,* 577 F.2d 873, 883 (5th Cir.1978); *accord Richards v. Allstate Insurance Co.,* 693 F.2d 502, 506 (5th Cir.1982); *Akermanis v. Sea-Land Service, Inc.,* 688 F.2d 898, 903 (2d Cir.1982). Higgins is limited to defending the judgment as accepted. *United States v. American Railway Express Co.,* 265 U.S. 425, 44 S.Ct. 560, 563, 68 L.Ed. 1087 (1924); *Arnold v. Eastern Airlines,* 681 F.2d 186, 205–06 (4th Cir.1982). His cross-appeal from the remittitur is dismissed.[1]

1. *Donovan* does not diminish the defendant's right to appeal a judgment after winning a remittitur. *Westerman,* 577 F.2d at 882–83; *accord Viestenz v. Fleming Companies, Inc.,* 681 F.2d 699, 702 (10th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 303, 74 L.Ed.2d 284 (1982). Smith International's appeal may proceed unscathed.

### III.

Smith International appeals from the findings that it guaranteed Higgins' employment for two years, and that it fired him without adequate justification. Both claims are rooted in Louisiana law.

LSA–C.C. Art. 2277 governs Higgins' proof of his claim of a fixed term employment contract with Smith International.[2] That section requires the testimony of at least one credible witness and other corroborating circumstances to prove an oral contract for more than $500.[3] Smith International contends that Higgins failed to produce the requisite corroborating evidence on his claim that he had a two-year contract. The jury and the district court disagreed, and so do we. Louisiana law requires only that the plaintiff produce general corroboration of his claim, not specific proof of all the contract's aspects. *Samuels*, 342 So.2d at 662; *B.M. Albrecht Electric, Inc. v. Griffin*, 413 So.2d 246, 247 (La. App.1982); *O'Rourke v. Tracy*, 375 So.2d 747, 748 (La.App.1979); *Lanier v. Alenco*, 459 F.2d 689, 692 (5th Cir.1972). Whether the evidence corroborates the plaintiff's claim is a finding to be made by the trier of fact, *id.;* that finding is not reversible unless it is clearly erroneous. *Id.*

The evidence presented at trial indicated that, after some period of discussion initiated by Smith International, Higgins left a well-paying position with a stateside drilling company to do comparable work for Smith International in Brazil. The jury could, and apparently did, draw from these roundly-conceded facts an inference that Higgins took the job with Smith International only after he was assured of some security while in its employ, *compare Lanier* at 692. We cannot find this decision clearly erroneous.[4]

Smith International also claims that the jury erred in finding that it was without justification to discharge Higgins. LSA–C.C. Art. 2749 provides that an em-

---

**2.** Proof that the contract was for a fixed term was central to Higgins' case. Under LSA–C.C. Art. 2747,

> A man is at liberty to dismiss a hired servant attached to his personal family, without assigning any reason for doing so. The servant is also free to depart without assigning any cause.

If Higgins did not have a contract, Smith International could dismiss him for whatever reason it chose, or for no reason at all (with the usual exceptions for dismissals infringing protected rights), *Jackson v. East Baton Rouge Parish School Board*, 393 So.2d 243 (La.App.1980); *Senac v. L.M. Berry Co.*, 299 So.2d 433 (La. App.1974). But if Higgins did have a two-year contract, LSA–C.C. Art. 2749 governs. That section provides that:

> If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time is expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.

*See post* note 5 in text.

**3.** LSA–C.C. Art. 2277 states that

> All agreements relative to movable property, and all contracts for the payment of money, where the value does not exceed $500, which are not reduced to writing, may be proved by any other competent evidence; such contracts or agreements, above $500 in value, must be proved at least by one credible witness, and other corroborating circumstances.

The requirement of "one credible witness" may be met by the testimony of plaintiff himself. *Samuels v. Firestone Tire & Rubber Co.*, 342 So.2d 661, 662 (La.1977).

**4.** Smith International has challenged the district court's instructions to the jury on the issue of proof of the contract, on the grounds that they did not adequately inform the jury of Higgins' burden of proof under LSA–C.C. Art. 2232 (requiring that "[h]e who claims the execution of an obligation must prove it.") and Art. 2277, *see ante* note 3, and that certain preliminary comments were confusing. Smith International did not offer proposed instructions on these points and registered no complaints with the district court about the instructions it gave. The Company's inaction means that its objections can be entertained now only if the trial court committed grave error leading to a miscarriage of justice. *Henderson v. U.S. Fidelity & Guaranty Co.*, 695 F.2d 109 (5th Cir.1983); *Meyers v. Moody*, 693 F.2d 1196 (5th Cir.1982). Our review of its instructions convinces us that no such serious error was made. The charge to the jury, considered as a whole, adequately states the controlling law in view of the evidence presented, the allegations of the complaint and the arguments of counsel. *Seymour v. Olin Corp.*, 666 F.2d 202, 216 (5th Cir.1982); *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 300 (5th Cir.1978).

ployer can discharge an employee hired for a fixed term only for "serious ground of complaint," *see ante* note 2. The meaning of "serious ground of complaint" is a question for the fact finder. *Laneuville v. Majestic Industrial Life Insurance Co.,* 223 La. 724, 66 So.2d 786, 788–89 (1953). Like the jury's finding on whether a contract existed, this decision cannot be upset unless clearly erroneous. Evidence before the jury established that the company had no complaint about Higgins' work. Portions of the employee handbook read into evidence at trial indicated that the company's usual procedures for resolving employee disciplinary problems included several steps of counseling and warning prior to discharge, rather than immediate discharge. It was the jury's province to decide whether Higgins' disobedience, in view of the circumstances of his illness, his financial situation, his work record, and the company's usual procedures, justified his precipitous dismissal. We cannot say that the jury's decision that it did not leaves us with a definite and firm conviction that a mistake has been made, *Pullman-Standard v. Swint,* 456 U.S. 273, 102 S.Ct. 1781, 1788, 72 L.Ed.2d 66 (1982), *citing United States v. Gypsum Co.,* 333 U.S. 364, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948).[5]

### IV.

Higgins' cross-appeal from the district court's order of remittitur is dismissed as barred by his acceptance of the remittitur. Smith International's contentions that the jury's verdict is unsupported by the evidence and predicated on erroneous instructions are rejected. The judgment of the district court is affirmed.

5. Smith International charges that the district court made several errors in instructing the jury on the justification for discharge issue. The company offered a proposed jury instruction listing specific instances of conduct found in earlier cases to justify discharge of an employee hired for a fixed term, and timely objected to the modified version of that instruction given by the district court, *compare ante* note 4. The district court explained that it deleted portions of the instruction it believed argumentative and suggestive. The district court's charge adequately captured the considerations

CROSS–APPEAL DISMISSED AND JUDGMENT AFFIRMED.

pertinent under Louisiana law and implicated by the evidence; it properly emphasized that the meaning of "serious ground of complaint" is not susceptible to precise definition as a matter of law, but is left in the first instance to the fact finder, *accord Laneuville,* 66 So.2d at 788–89. The district court "need not couch its charge in the precise language and form fancied by a litigant's attorney," *Coughlin,* 571 F.2d at 300. Read as a whole, the charge is a proper statement of the controlling law. *Id.* We decline to reverse on this ground.